INSURANCE COMPANY v. DUNN.

1. Where, after a suit has been properly removed from a State court into the Circuit Court of the United States, under the act of March 2d, 1867, which allows such removal, in certain cases specified by it, "at any time before the final hearing or trial of the suit," the State court still goes on to adjudicate the case, against the resistance of the party who got the removal, such action on its part is a usurpation, and the fact that such a party has contested the suit in such State court, does not, after a judgment against him, on his bringing the proceedings here for reversal and direction to proceed no further, constitute a waiver on his part, of the question of the jurisdiction of the State court to have tried the case.

2. The language above quoted—"at any time before the final hearing or trial of the suit"—of the act of March 2d, 1867, is not of the same import as the language of the act of July 27th, 1866, on the same general subject—"at any time before the trial or final hearing." On the contrary, the word "final" in the first-mentioned act, must be taken to apply to the word "trial" as well as to the word "hearing." Accordingly, although a removal was made after a trial on merits, a verdict, a motion for a new trial made and refused, and a judgment on the verdict, yet it having been so made in a State where by statute the party could still demand, as of right, a second trial, *held*, that such first trial was not a "final trial" within the meaning of the act of Congress; the party seeking to remove the case having demanded and having got leave to have a second trial under the said statute of the State.

ERROR to the First Judicial District Court of Hamilton County, Ohio; the case being thus:

The Judiciary Act of 1789,† thus enacts:

"If a suit be commenced in any State court by a citizen of the State in which the suit is brought against a citizen of another

---

† 1 Stat. at Large, 79.

State, . . . and the defendant shall *at the time of entering his appearance* in such State court file a petition for the removal of the cause for trial into the next Circuit Court, to be held in the district where the suit is pending, &c., . . . it shall then be the duty of the State court . . . to proceed no further in the cause."

Then came an act of July 27th, 1866.*   It was thus :

"If in any suit . . . in any State court by a citizen of the State in which the suit is brought against a citizen of another State, . . . a citizen of the State in which the suit is brought is or shall be a defendant, and if the suit, so far as relates . . . to the defendant who is the citizen of a State other than that in which the suit is brought, is or has been instituted or prosecuted for the purpose of restraining or enjoining *him*, or if the suit is one in which there can be a final determination of the controversy, so far as it concerns him, without the presence of the other defendants as parties in the cause, then, and in every such case, . . . the defendant who is a citizen of a State other than that in which the suit is brought, may, *at any time before the trial or final hearing of the cause*, file a petition for the removal of the cause as against him into the next Circuit Court of the United States to be held in the district where the suit is pending, . . . and it shall be thereupon the duty of the State court to . . . proceed no further in the cause as against the defendant so applying for its removal."

Finally came an act of March 2d, 1867.†   Its title is,

"An act to *amend* an act entitled 'An act for the removal of causes in certain cases from State courts,'" approved July 27th, 1866.

It runs thus :

"*Be it enacted*, That the act entitled '*An act for the removal of causes in certain cases from State courts*,' approved July 27th, 1866, be and the same is hereby amended as follows: That where a suit may hereafter be brought in any State court, in which there is controversy between a citizen of the State in which the suit is brought and a citizen of another State, such citizen of another State, whether he be plaintiff or defendant, if he will make and file in such State court an affidavit, stating

---

* 14 Stat. at Large, 306.                    † Ib. 558.

that he has reason to and does believe that from prejudice or local influence he will not be able to obtain justice in such State court, may, *at any time before the final hearing or trial of the suit,* file a petition in such State court for the removal of the suit into the next Circuit Court of the United States, to be held in the district where the suit is pending, . . . and it shall be, thereupon, the duty of the State court to . . . proceed no further in the suit."

Each of these three acts enacts that after the case is removed, in the way which they respectively provide, into the Circuit Court of the United States, it shall *there* proceed in the same manner as if it had been brought in that court by original process.

These statutes being in force, Mrs. Dunn, widow and administratrix of John Dunn, sued the Home Life Insurance Company of Brooklyn, in one of the courts of common pleas of Ohio, on a policy of insurance for $2000 on her husband's life, and obtained a verdict against the company. The company moved to set aside the verdict and for a new trial. But upon consideration the court overruled the motion; and it was "therefore considered by the court that the plaintiff recover her damages herein assessed, and the costs to be taxed."

This, of course, in any court proceeding in the course of the common law, would have been the end of all "trials," or of other relief to the insurance company, except such as it might have provided for itself through writ of error.

But the law of Ohio respecting second trials is somewhat peculiar. The matter does not, as at common law, and in most of the States, rest in the discretion of the court trying the case, but rests in the option of the suitor himself. One of the statutes of the State,* known as the Second Trial Act, thus enacts:

"SECTION 1. A second trial may be *demanded and had* in any civil action which has been . . . instituted in any court of com-

---

* "An act to relieve District Courts, and to give greater efficiency to the judicial system of the State," passed April 12th, 1858, Swan & Critchfield's Statutes, 1155.

mon pleas in this State, in which said court has original jurisdiction, and in which either party has the right by law to demand a trial by jury ... and *after a judgment or final order has been rendered,* upon the terms and in the manner hereinafter provided.

"SECTION 2. Any person desirous of such second trial ... shall at the term of the court at which judgment was rendered, enter ... into an undertaking within the time hereinafter limited, with security ... payable to the adverse party in such sum as may be fixed by the court, and conditioned to the effect that the party obtaining such second trial shall abide and perform the order and judgment of the court, and pay all moneys, costs, and damages which may be required or awarded against him consequent upon such second trial."

Under this statute of the State, the insurance company after trial and judgment demanded and had leave to have " a second trial."  The company gave a bond in $4000, conditioned that it should abide and perform the judgment of the court, and pay all moneys which might be required of or awarded against it consequent upon a second trial by the Court of Common Pleas of Hamilton County.

At the next term of the court the company—assuming that, notwithstanding the trial already had, they had (in virtue of their demand for a second trial and their leave to have it) not yet had a "*final* hearing or trial"—filed a petition in the Court of Common Pleas, where the case had been tried, to remove it into the Circuit Court, under the last of the above-quoted acts of Congress, the act, namely, of 1867, quoted on pages 215–16.  And the Court of Common Pleas ordered the removal, and that no further proceedings should be had before *it.*  A transcript of the record was accordingly filed in the Circuit Court, and the cause docketed there. Mrs. Dunn, by her counsel, now appeared in that court and moved to dismiss the case, as not having been one for removal under any of the acts of Congress.

The ground of her motion apparently was that the petition for removal had been too late : that it should have been *before* the trial in the Common Pleas; that under the act of 1789 a defendant desiring to remove was bound to

petition for a removal, if he wanted one, "at the time of entering his appearance;" that under that of 1866, "at any time *before the trial* or final hearing of the cause," and that though in the act of 1867 there was a slight transposition of words, so as to read "at any time before the *final* hearing or *trial* of the suit," the meaning in both acts was the same, the words "final hearing" referring to proceedings in equity, and the word "trial" to a proceeding at common law; and even if this were not so, that the case was the same, for that the company had had a final trial; that Congress could not be supposed to have had reference to the very peculiar local law of Ohio, about trials, of which perhaps not ten of its members had ever heard, but was to be taken to have referred to the general system of the common law, which came to us all by inheritance, and still so widely prevailed over the nation; that thus viewed the company had had a final trial; for it had had a trial on merits before a jury, it had moved for and it had been refused a new trial, and a judgment had been entered against it, which was now in existence, a lien upon its property; that the words "final trial" were used in contradistinction to the words "interlocutory trial," and this trial not having been interlocutory was final. Further than this, that if the application for removal, after a second trial was taken, was in time to be within the terms of the act of March 2d, 1867, then that the act violated the seventh amendment to the Constitution, which reads thus:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law."

It was said that one branch of this suit was a suit at common law, and that the amount in controversy exceeded twenty dollars; and that all of the facts in the case were tried by a jury, and their verdict was affirmed before the case was removed into the Circuit Court for these same facts

to be re-examined there, for a cause and under a proceeding not known to the common law, nor within any of its rules.

It was said further, that the law of March 2d, 1867, was unconstitutional for another reason, to wit, that it destroyed the second trial bond that had been given in the State court to secure the claim being litigated, without the process of law, and without consideration or any equivalent bond being substituted; that the condition of the bond to pay a judgment to be obtained at a second trial in the Court of Common Pleas of Hamilton County, Ohio, was not answered by a judgment obtained in the Circuit Court, and that the sureties on the bond would not be liable to answer to such a judgment.

But the Circuit Court was not of this view; and so, over-ruling the motion to dismiss, it retained the cause upon its docket.

Mrs. Dunn then filed an amended declaration in the Circuit Court, and that was now pending there.

She now went back into the State courts, and by petition for error filed in the *District Court* of Hamilton County (a court superior to the Common Pleas, and having in general jurisdiction to review its orders*), prayed for a reversal of the order which the Common Pleas had made to remove the case into the Circuit Court, and that it should be no further proceeded in before *it*. The insurance company opposed the application.

The District Court, however, did reverse the order; being of opinion that the petition for removal, in being filed after the trial, had not been filed in accordance with any act of Congress, and that the removal was not authorized by law.

The insurance company then took the question of the right of removal from the District Court to the Supreme Court of the State. That court, like the District Court, held—the bench being unanimous—that the removal, in being made *after* the trial, was unauthorized by law and void. It said:

---

* Code, §§ 512, 513; Swan & Critchfield's Statutes, 1099.

"This act of March 2, 1867, is an amendment of the act of July 27, 1866, in which the language used is, that the petition may be filed 'at any time before *the trial* or *final hearing* of the cause.'

"We have no doubt the terms 'trial' and 'final hearing' ought to have the same meaning in both acts, and that their transposition in the amendatory act was merely accidental.

"The terms, it seems to us, were intended to embrace actions at law and suits in equity—the word 'trial' having reference to an action at law, and the words 'final hearing' to a suit in equity; and that by 'the final hearing or trial of the suit,' is meant a hearing or trial upon the merits, such as results in a final judgment in an action at law, and a final decree in a suit in equity.

"The act of Congress was, doubtless, intended to have the same operation in all the States, irrespective of the difference that may exist in the modes provided in the several States for examining, in the appellate court, questions decided in the court below.

"In this State, after final decree, equity cases are appealable to the District Court, on the appellant giving notice and entering into an undertaking as required by the statute. In cases in which either party has the right to a trial by jury, there can be no appeal, but either party, after final judgment, by giving notice of his demand, and entering into an undertaking as required by the statute, is entitled to a second trial. If no undertaking is given, the demand for a second trial and the notice of appeal go for nothing; and the judgment or decree is conclusive upon the rights of the parties. Such, also, is the effect of the judgment or decree from the time of its rendition to the giving of the undertaking. And notwithstanding the appeal or the right to a second trial may be perfected, the lien of the judgment or decree is continued until the determination of the cause on appeal or second trial.

"It is competent for the legislature to take away the right of appeal and of a second trial. If this were done there would be no ground for the removal of the cause under the act of Congress.

"The true construction of the act does not, we think, thus make its operation depend upon whether the legislation of the State allows or does not allow the exercise of appellate juris-

diction after a common-law trial, or the final hearing of a suit in equity in the court of original jurisdiction.

" To bring this case within the act of Congress would be to allow the non-resident party to experiment with the jurisdiction of the State courts.  If the trial should result in his favor, it would bind his adversary, but if it should result adversely to him, he could escape the effect of the litigation by removing the cause to another jurisdiction.  To lead us to such a conclusion, ' the intention ought to be expressed with irresistible clearness.'

" The conclusion at which we have arrived in this case is in accordance with the decision of the Supreme Court of Wisconsin in *Akerly* v. *Vilas.** The judgment of the court in that case was pronounced by Paine, J., in an able opinion, to which we refer for a more elaborate discussion of the questions."

A second trial, contested by the company upon both law and merits, was then had, in the Common Pleas, resulting as before in a verdict and judgment for the plaintiff, which judgment the District Court, after hearing upon petition in error, affirmed.

Upon petition averring these facts, a writ of error was granted by one of the justices of this court, to the said District Court, directing the records and proceedings in the cause to be certified to this court, which was accordingly done, and the plaintiff in error, the insurance company, sought, herein, to reverse the order of the said District Court, asserting that the decision called in question the construction of the statute of 1867, of the United States, and was against the right and privilege set up by the defendant, the now plaintiff in error, thereunder.

The errors complained of were:

1st. The reversal by the District Court of the order of removal.

2d. The subsequent judgment in the Court of Common Pleas after the jurisdiction of that court had been ousted by the removal.

3d. The affirmance of the said judgment by the District Court.

---

* 24 Wisconsin, 165.

*Mr. H. A. Morill, with whom were Messrs. George Hoadly and E. M. Johnson, for the plaintiff in error ; Mr. W. H. Standish, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

The case involves a question of jurisdiction arising between State courts and a Federal court, which, though not without interest, involves no difficulty in its solution.

The administratrix sued the insurance company upon a life policy, in the Court of Common Pleas of Hamilton County. She recovered a verdict, and thereafter a judgment was rendered upon it. The company applied for a new trial, and gave bond pursuant to the laws of Ohio, in that behalf.* This had the effect of vacating the verdict and judgment as if a new trial had been granted according to the course of the common law, except that the lien of the judgment remained for the security of the plaintiff, in addition to the bond given by the defendant. In this condition of things, the company petitioned the Court of Common Pleas for the removal of the cause to the Circuit Court of the United States for that district, pursuant to the act of Congress of March 2d, 1867.† The requirements of the statute having been complied with, the court ordered that no further proceedings be had there in the cause, and it was removed to the Circuit Court.

The administratrix appeared in that court and moved that the case be dismissed for want of jurisdiction. The motion was overruled. The administratrix thereupon asked leave to file an amended petition in that court. Leave was granted. The petition was filed, and is still pending there. She thereupon instituted proceedings in error in the District Court for the county to reverse the order made by the Court of Common Pleas, and a judgment of reversal was rendered. The company applied to the Supreme Court of the State for leave to file a petition in error. Leave was refused. This in effect affirmed the judgment of the District Court. A

---

* Swan & Critchfield's Revised Statutes, 1155.     † 14 Stat. at Large, 558.

second trial was thereupon had in the Common Pleas, and the administratrix recovered a second judgment.   The company removed the case to the District Court of the county by a petition in error.   That court affirmed the judgment. The company thereupon sued out this writ of error, and the entire record in the State courts is thus brought before us for review.

It is insisted that the company, by appearing and contesting the claim in the second trial, waived the question of jurisdiction, and was bound by the judgment.   To this there are several answers.

The company resisted the reversal of the order of removal made by the Common Pleas, and did all in its power to that end.   Having failed, and being forced into a trial, it lost none of its rights by defending against the action.

The cause was out of the Common Pleas, and in the Circuit Court.   The former had jurisdiction to remit and the latter to receive it.   Being in the latter, that court had jurisdiction to retain it.   If there were error on the part of the Circuit Court in overruling the motion to dismiss, because the case had been improperly brought there, the remedy should have been sought in the Federal courts.   The State courts were incompetent to give it.   The authority of the latter was at an end until the case should be restored, if that were ever done, by the action of the former.   Nothing is lost to the State courts by the application of this rule, for if they refuse improperly to permit a case to be removed, their refusal is liable to be reviewed and reversed by the Federal tribunals, and the power of paramount and final judgment rests with them.*   The same rule of exclusion applies in favor of a State or Federal court which first gets possession of a case over which both have jurisdiction.†

The conditions prescribed having been complied with, the act of Congress expressly required the State court where it was originally pending, "*to proceed no further in the suit.*"

---

* Gordon *v.* Longest, 16 Peters, 97.

† Hagan *v.* Lucas, 10 Id. 400; Taylor *v.* Carryl, 20 Howard, 583.

The further proceedings of the Common Pleas was a clear case of usurped jurisdiction. The illegality was gross. The action of the District and Supreme Court of the State gave them no validity. The maxim, that consent cannot give jurisdiction, applied with full force. *Gordon* v. *Longest** is exactly in point and conclusive.

This brings us to the cardinal inquiry in the case. It is maintained by the counsel for the administratrix, that the order of removal by the Common Pleas was erroneously made, the first verdict and judgment being "*final*" within the meaning of the act of Congress and the laws of Ohio. If the point be well taken the judgment must be affirmed. Otherwise it must be reversed.

It is not denied that the requirements of the act of Congress were fully complied with. No question is raised upon that subject. The proposition involves the construction and effect of the act, and of the laws of Ohio under which the transfer was made. The act declares that the petition may be filed "at any time before the final hearing or trial of the suit." It is contended that the qualifying adjective *final* applies to the term "*hearing*" and not to "*trial*," and that any *trial*, whether final or not, is conclusive against the petitioner. This is too narrow a view. It is contrary to the grammatical construction and the obvious import of the words. The repetition of *final* before *trial* would have been tautology. To produce such a result as that contended for, the indefinite article should have been placed before the word "*trial*," so that the language would have been,—before the final hearing *or a trial.* This would doubtless have been done if such had been the intent of the act. The statute is remedial, and must be construed liberally. There is no reason for interpolating this limitation. The adjective must be taken distributively and applied as well to the second as to the first term, and to both alike. The test is whether the

* 16 Peters, 97; see also Stevens & Dwight *v.* Phœnix Insurance Co., 41 New York, 149; Kanouse *v.* Martin, 14 Howard, 23; Same *v.* Same, 15 Id. 198; Hadley et al. *v.* Dunlap et al., 10 Ohio State, 1.

hearing or the trial is the final one in the cause. It would be a strange anomaly if in equity and admiralty cases a final hearing only, could take away the right of removal, while any trial, however interlocutory in its character, should have the same effect in an action at law. This would be in conflict alike with the letter, the spirit, and the meaning of the act, and would largely defeat the purpose of its enactment. It was intended to permit the removal at any time before a hearing *or trial,* final in the cause as it stood, when the application for the transfer was made.

The proposition that the first judgment of the Common Pleas was final within the meaning of the laws of Ohio cannot be maintained. To say that there can be *two* final judgments upon the same pleadings, in the same cause, in the same court, and for exactly the same things, as the results of two successive trials, involves a solecism. If the first judgment was not final the first trial could not have been so. When the demand for a new trial was made, and the requisite bond was given and approved, the case stood upon the docket in all respects as if a new trial had been granted for some error or defect in the former trial, irrespective of the laws in question, and as if no previous trial had taken place. It is true that the lien of the judgment was preserved, but that was an incident remaining after the principal thing had been put an end to. It was like the bond, for the security of the plaintiff, and for no other purpose. The former affects the question of the finality of the first trial no more than the latter. The law of Ohio declares that the bond shall be " conditioned to the effect, that the party obtaining such second trial shall abide and perform the order and judgment of the court, and pay all money, costs, and damages which may be awarded against him, consequent upon such second trial." The proceeding is thus designated and regarded as a " second trial." The judgment following—unless reversed or set aside—is the one to be satisfied, and it must necessarily be the final, and the only final one. The same remarks as to finality apply to the trial which preceded it.

In the act of Congress of 1866,* the language used in this connection is, "at any time before the trial or final hearing." If the difference in the act of 1867 be material, it is fair to presume that the change was deliberately made to obviate doubts that might possibly have arisen under the former act and to make the latter more comprehensive.

The fact that, under our construction, a case which has made progress, however far, if it has not passed the *final trial*, is liable to be removed, has little weight as an adverse argument. Under the Judiciary Act of 1789, cases that have reached their termination in the highest courts of the States, may be brought here by a writ of error for review, and the practice in conformity to that section has been constant from the organization of this court down to the present time. If the act be unwise, the remedy lies with the legislature and not the judicial department of the government.

Of the constitutionality of this act we entertain no doubt. The question is not an open one in this court. A few remarks will be sufficient to dispose of the subject. The third article of the Constitution declares that the judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as Congress may from time to time establish, and that it shall extend, among other things, to "controversies" "between citizens of different States." As regards the inferior courts authorized to be established, Congress may give them such jurisdiction, both original and appellate, within the limits of the Constitution, as it may see fit to confer. How their appellate jurisdiction shall be exercised, is not declared. The whole subject is remitted to the unfettered discretion of Congress. It may be applied to any other inferior Federal court, and to any State court where a case is presented which, by reason of the character of the parties or a question involved, falls within the scope of such judicial cognizance. Courts of the States and those of the nation are alike within its sphere, and its exercise may be authorized before or after judgment in the tribunals over which it is extended.

---

* 14 Stat. at Large, 307.

This act is confined to controversies between citizens of different States, and the power given to the Circuit Court is appellate.   The jurisdiction involves the same principle, and rests upon the same foundation with that conferred by the twenty-fifth section of the Judiciary Act of 1789.   The constitutionality of that provision has been uniformly sustained by the unanimous judgment of this court, whenever the subject has been presented for adjudication.   The twelfth section of the act of 1789, and the third section of the act of the 2d of March, 1833, relating to revenue officers, present the same question.   We are not aware that a doubt of the validity of either has ever been expressed by any Federal court.   The acquiescence is now universal.   The subject was elaborately examined in *Martin* v. *Hunter.**

The seventh amendment to the Constitution, touching the re-examination in the courts of the United States of facts which have been tried by a jury, has no application to this case, because the first judgment had been vacated, the first verdict set aside, and a new trial granted, as before stated, when the cause was removed to the Circuit Court.

The judgment of affirmance by the District Court and the judgment affirmed are REVERSED, and the District Court and the Court of Common Pleas will be directed to

PROCEED NO FURTHER IN THE SUIT.

---

* 1 Wheaton, 333; see also The Mayor *v.* Cooper, 6 Wallace, 247.