## RAILROAD COMPANY *v.* MISSISSIPPI.

1. A petition for a *mandamus* was filed in one of her courts by the State of Mississippi to compel a railroad company, a corporation existing under the laws of that State, to remove a stationary bridge which it had erected over Pearl River, a navigable stream on the line between Louisiana and Mississippi. Thereupon the company presented its petition, duly verified, praying for the removal of the suit into the Circuit Court of the United States, and alleging that the right to erect, use, and maintain the bridge was vested by the company's charter; that its maintenance over said river was authorized by the act of Congress approved March 2, 1868 (15 Stat. 38); that thereunder it became a part of a post-road over which for several years the mails of the United States have been carried, and that therefore the suit impugns the rights, privileges, and franchises granted by said act. The petition was accompanied by a bond with good and sufficient security, conditioned as required by the act of March 3, 1875. 18 Stat. part 3, p. 471. *Held*, that under the latter act the company was entitled to the removal prayed for.

2. The decisions of this court affirming the jurisdiction of the courts of the United States in cases arising under the laws of the United States, or where a State is a party, cited and commented on.

3. The ruling in *Insurance Company* v. *Dunn* (19 Wall. 214) and *Removal Cases* (100 U. S. 457), that a party loses none of his rights who, after failing to obtain its removal, contests a suit on its merits in the State court, reaffirmed.

ERROR to the Supreme Court of the State of Mississippi. The facts are stated in the opinion of the court.

*Mr. John A. Campbell* and *Mr. Thomas L. Bayne* for the plaintiff in error.

*Mr. Alexander M. Clayton, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff in error, defendant below, filed a petition in the State court of original jurisdiction for the removal of this suit into the Circuit Court of the United States for the Southern District of Mississippi. The petition was accompanied by a bond, with good and sufficient surety, conditioned as required by the statute. The application for removal was denied, and the court, against the protest of the company, proceeded with the trial of the suit. A demurrer to the answer was sustained, and judgment was entered in behalf of the State. Upon a writ of error, sued out by the company, the Supreme Court of

Mississippi gave its sanction to the action of the inferior court upon the petition for removal, and affirmed, in all respects, its judgment upon the merits.

The first assignment of error relates to the action of the State court in proceeding with the trial after the filing of the petition and bond for removal of the suit. If the suit was one which the company was entitled, under the statute, to have removed into the Circuit Court of the United States, then all that occurred in the State court, after the filing of the petition and bond, was in the face of the act of Congress. *Gordon* v. *Longest*, 16 Pet. 97; *Kanouse* v. *Martin*, 15 How. 198; *Insurance Company* v. *Dunn*, 19 Wall. 214. Its duty, by the express command of the statute, was, the suit being removable, to accept the petition and bond, and proceed no further.

Among the cases to which the national Constitution extends the judicial power of the United States are those arising under the Constitution or laws of the Union. The first section of the act of March 3, 1875, determining the jurisdiction of circuit courts of the United States, and regulating the removal of causes from State courts, invests such circuit courts with original jurisdiction, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and " arising under the Constitution or laws of the United States." Under the second section of that act either party to a suit of the character just described may remove it into the Circuit Court of the United States for the proper district. The only inquiry, therefore, upon this branch of the case is, whether the present suit, looking to its nature and object as disclosed by the record, is, in the sense of the Constitution, or within the meaning of the act of 1875, one " arising under the Constitution or laws of the United States."

The action was commenced by a petition filed, in behalf of the State, against the New Orleans, Mobile, and Chattanooga Railroad Company (now known as the New Orleans, Mobile, and Texas Railroad Company), a corporation created in the year 1866, under the laws of Alabama, and by an act of the legislature of Mississippi, passed Feb. 7, 1867, recognized and approved as a body politic and corporate in that State, with

authority to exercise therein the rights, powers, privileges, and franchises granted to it by the State of Alabama.

The object of the action was to obtain a peremptory writ of *mandamus*, requiring the company to remove a stationary bridge which it had erected across Pearl River, on the line between Louisiana and Mississippi, and construct and maintain, in the central portion of the channel of that river, where the railroad crosses, a drawbridge which, when open, will give a clear space, for the passage of vessels, of not less than sixty feet in width, and provide, after its construction, for the opening of the drawbridge, without unnecessary delay, for any and all vessels seeking to pass through it.

The claim of the State is : —

1. That the construction and maintenance of a stationary bridge across Pearl River is in violation of the company's charter, an obstruction to the navigation of the river, and a public nuisance, resulting in great and irreparable damage to the people of Mississippi.

2. That Pearl River, by the common law and the law of nations, is a navigable river, in which the tide ebbs and flows above said bridge, is navigable for steamboats for more than two hundred miles, and has been so navigated from time immemorial; that the river is the boundary between Mississippi and Louisiana, neither of those States having power to authorize any obstruction to its free navigation; that by an act of Congress, entitled " An Act to enable the people of the western part of Mississippi Territory to form a constitution and State government, and for the admission of said State into the Union on an equal footing with the original States," passed March 1, 1817, it was, among other things, provided " that the Mississippi River and the navigable rivers and waters leading into the same, or into the Gulf of Mexico, shall be common highways and for ever free, as well to the inhabitants of said State as to other citizens of the United States ; " that those provisions constituted a condition on which the State of Mississippi was admitted into the Union, and an engagement on the part of the United States that all the navigable rivers and waters emptying into the Gulf of Mexico should for ever be free to all the inhabitants of the State of Mississippi; that Pearl River does lead and empty

into the Gulf of Mexico; that the bridge is such an obstruction to the navigation of Pearl River as to cause permanent injury, as well to the State of Mississippi and its inhabitants, as to the commerce of the United States and of the world, and, consequently, was in violation of the law.

The company resists the application for a *mandamus* upon several grounds.

It affirms that the bridge in question had been constructed and is maintained in accordance with its charter and conformably to the power and authority conferred by the States of Alabama, Mississippi, and Louisiana.

It further avers, in its answer, that the railroad is a great public highway through those States, connecting them with other portions of the United States; that Congress, in view of the magnitude and cost of the work, and to expedite its construction, by an act entitled "An Act to establish and declare the railroad and bridges of the New Orleans, Mobile, and Chattanooga Railroad, as hereafter constructed, a post-road, and for other purposes," approved March 2, 1868, authorized and empowered that corporation to construct, build, and maintain bridges over and across the navigable waters of the United States on the route of said railroad, between New Orleans and Mobile, for the use of the company and the passage of its engines, cars, trains of cars, mails, passengers, and merchandise, and that the railroad and its bridges, when complete and in use, were to be held and deemed lawful structures and a post-road; that the act of Congress required drawbridges on the Pascagoula, the Bay of Beloxi, the Bay of St. Louis, and the Great Rigolet, but none on Pearl River, power being reserved by Congress to amend or alter the act so as to prevent or remove material obstructions; that the company is authorized to maintain the bridge in question under that act of Congress; that the same is a lawful structure and a post-road, which no court can, consistently with the act of Congress, overturn or abate as illegal or as a nuisance.

On the day succeeding that on which its answer was filed, the company presented the petition for removal, to which reference has already been made, accompanied by a bond in proper form. That petition sets out the nature and object of the action, and claims that the right to erect and to maintain the

present bridge for the conveyance of the cars, trains, passengers, mails, and merchandise, vested in the company, " on a contract with the State of Mississippi in the enactment aforesaid ; that the State of Mississippi has no power to repudiate that contract or to impair its obligations; that it is a vested right resting on a contract and supported and sustained by the Constitution of the United States, and that this cause is one arising under the Constitution of the United States."

It then proceeds : —

" And your petitioner further represents that the bridge aforesaid, and its maintenance over the said river in the manner in which it exists, is authorized by the act of Congress approved March 2, 1868, which authorized and empowered the said company to construct, build, and maintain bridges over and across the navigable waters of the United States on the route of the said railroad between Mobile and New Orleans, and that when constructed they should be recognized as lawful structures and a post-road, and were declared to be such; and the Congress reserved the power to alter the same when they become an obstruction to the navigable waters.

" Your petitioner says that the railroad and bridges are and have been for three or more years a post-road, over which the mails of the United States have been carried and are now being carried, and as the bridge referred to is a lawful structure under the laws of the United States, this suit impugns the rights, privileges, and franchises granted by the act of Congress aforesaid of the 2d March, 1868."

From this analysis of the pleadings, and of the petition for removal, it will be observed that the contention of the State rests, in part, upon the ground that the construction and maintenance of the bridge in question is in violation of the condition on which Mississippi was admitted into the Union, and inconsistent with the engagement, on the part of the United States, as expressed in the act of March 1, 1817.   On the other hand, the railroad company, in support of its right to construct and maintain the present bridge across Pearl River, invokes the protection of the act of Congress passed March 2, 1868.   While the case raises questions which may involve the construction of State enactments, and also, perhaps, general principles of law,

not necessarily connected with any Federal question, the suit otherwise presents a real and substantial dispute or controversy which depends altogether upon the construction and effect of an act of Congress. If it be insisted that the claim of the State, as set out in its petition, might, possibly, be determined by reference alone to State enactments, and without any construction of the act of 1817, the provisions of which are invoked by the State in support of its application for *mandamus*, the important, and, so far as the defence is concerned, the fundamental, question would still remain, as to the construction of the act of Congress of March 2, 1868. That act, the company contends, protects the present stationary bridge against all interference whatever, upon the part either of the State or of the courts. In other words, should the court be of opinion that the law is for the State, if the rights of parties were tested simply by the statutes of Alabama and Mississippi, it could not evade, but must meet and determine, the question, distinctly raised by the answer, as to the operation and effect of the act of Congress of 1868.

Is it not, then, plainly a case which, in the sense of the Constitution, and of the statute of 1875, *arises* under the laws of the United States?

If regard be had to the former adjudications of this court, this question must be answered in the affirmative.

It is settled law, as established by well-considered decisions of this court, pronounced upon full argument and after mature deliberation, notably in *Cohens* v. *Virginia*, 6 Wheat. 264; *Osborn* v. *Bank of the United States*, 9 id. 738; *Mayor* v. *Cooper*, 6 Wall. 247; *Gold-Washing & Water Company* v. *Keyes*, 96 U. S. 199; and *Tennessee* v. *Davis*, 100 U. S. 257.

That while the Eleventh Amendment of the National Constitution excludes the judicial power of the United States from suits, in law or equity, commenced or prosecuted against one of the United States by citizens of another State, such power is extended by the Constitution to suits commenced or prosecuted by a State against an individual, in which the latter demands nothing from the former, but only seeks the protection of the Constitution and laws of the United States against the claim or demand of the State:

That a case in law or equity consists of the right of one party, as well as of the other, and may, properly, be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either;

That cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim, or protection, or defence of the party, in whole or in part, by whom they are asserted;

That, except in the cases of which this court is given, by the Constitution, original jurisdiction, the judicial power of the United States is to be exercised in its original or appellate form, or both, as the wisdom of Congress may direct; and, lastly,

That it is not sufficient to exclude the judicial power of the United States from a particular case, that it involves questions which do not at all depend on the Constitution or laws of the United States; but when a question to which the judicial power of the Union is extended by the Constitution forms an ingredient of the original cause, it is within the power of Congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it.

These propositions, now too firmly established to admit of, or to require, further discussion, embrace the present case, and show that, whether we look to the Federal question raised by the State in its original petition, or to the Federal question raised by the company in its answer, the inferior State court erred, as well in not accepting the petition and bond for the removal of the suit to the Circuit Court of the United States, as in thereafter proceeding to hear the cause. It was entirely without jurisdiction to proceed after the presentation of the petition and bond for removal.

In view of our decisions in *Insurance Company* v. *Dunn* (19 Wall. 214), in *Removal Cases* (100 U. S. 457), and in other cases, it is scarcely necessary to say that the railroad company did not lose its right to raise this question or jurisdiction by contesting the case, upon the merits, in the State courts after

its application for the removal of the suit had been disregarded. It remained in the State court under protest as to the right of that court to proceed further in the suit, and there is nothing in the record to show that it waived its right to have the case removed to the Federal court, and consented to proceed in the State court, as if there had been no petition and bond for the removal.

The judgment of the Supreme Court of Mississippi will, therefore, be reversed, and the cause remanded for such orders as may be consistent with this opinion, and with directions that the court of original jurisdiction be required to set aside all judgments and orders made in this suit after the presentation of the petition and bond for its removal into the Circuit Court of the United States, and proceed no further in the suit; and it is

*So ordered.*

MR. JUSTICE FIELD did not sit in this case, nor take part in deciding it.

MR. JUSTICE MILLER dissenting.

I dissent from the opinion of the court in this case. It is always a matter of delicacy when a cause of which a court has undoubted jurisdiction is transferred, at the instance of one party, to another court of concurrent jurisdiction. It is especially so when the transfer is to be made to a Federal from a State court, without regard to the consent of the latter, and against the objection of the other party.

In such a case the right of removal should be made very clear on the application for that purpose. And when the application has been refused, and the State courts, up to the highest to which the cause can be carried, have considered and decided it upon its merits, the judgment finally rendered should not be treated as a nullity, unless the case upon which the want of jurisdiction of these courts depends is made very plain indeed.

I do not think such a case is presented here.

The removal is based upon the second section of the act of Congress of March 3, 1875, " to determine the jurisdiction

of circuit courts of the United States, and to regulate the removal of causes from State courts, and for other purposes." This enacts "that any suit of a civil nature, at law or in equity, now pending or hereafter brought in any State court, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and *arising under the Constitution or laws of the United States*, or treaties made, or which shall be made, under their authority," may be removed by either party, on proper showing, to the Circuit Court of the United States. The decision is that this is a suit arising under a law of the United States, to wit, the act of Congress concerning the bridge of which plaintiff complains. I make no captious criticism by reason of the fact that the opinion of the court is mainly directed to the constitutional provision extending the judicial power of the United States to *cases* arising under that instrument and the laws and treaties made under its authority, while the word used in the statute is *suits*. The language of the Constitution may be broad enough to sustain a statute which authorizes the removal of a cause at any stage when a *case* is made, which, taken as a whole, requires a judgment based upon the Constitution, a law, or a treaty of the United States.

The act of 1875 is the first which ever attempted to give a right of removal on such ground, and it limits that right to *suits arising under* the Constitution, laws, or treaties of the United States. It does not give the right of removal where the *defence* arises under such a law, unless "suit" necessarily includes the defence which may be made thereto. The lexicons do not so define it. Bouvier's Law Dictionary says that in the practice of the law "suit" means "an action." Can a defence to an action be called the action? No more can the defence to a suit be called the suit. Webster says "suit" is the act of suing; the process by which one gains an end or object, and as a word in the law, he says it is "an attempt to gain an end by legal process;" "a legal application to a court for justice;" "an action or process for the recovery of a right of action." Does this mean the defence to an alleged right of action? Can it be held to mean the attempt to defeat an action? Worcester defines it thus: "In modern law, the prose-

cution of some claim or demand in a court of justice; judicial prosecution:" and perhaps this is as good a definition of the word, when used in reference to legal proceedings, as any that can be framed, and it is peculiarly applicable to the use of the word in the act of 1875.

In *Weston* v. *The City of Charleston* (2 Pet. 449), Mr. Chief Justice Marshall, in delivering the opinion of the court, conceding the term to be a very comprehensive one, says it applies " to any proceeding in a court of justice by which an individual *pursues that remedy* in a court of justice which the law affords him."

Taking the idea of a " suit " as thus defined, what is meant by the suit *arising* under a law of Congress? The obvious answer seems to be that the *cause of action is founded on* the act of Congress; that the *remedy* sought is one *given* by an act of Congress; that the *relief* which is prayed is a relief *dependent on* an act of Congress; that the right to be enforced in the suit is a right which rests upon an act of Congress. In all this I see no place for holding that a *defence* to a suit not so founded on an act of Congress, or a plea which the defendant may interpose to any ordinary action, though that plea be founded on an act of Congress, is a suit arising under an act of Congress.

Looking also to the reasons which may have influenced Congress, it may well be supposed that while that body intended to allow the removal of a suit where the very foundation and support thereof was a law of the United States, it did not intend to authorize a removal where the cause of action depended solely on the law of the State, and when the act of Congress only came in question incidentally as part (it might be a very small part) of the defendant's plea in avoidance. In support of this view, it may be added that he in such case is not without remedy in a Federal court; for if he has pleaded and relied on such defence in the State court, and that court has decided against him in regard to it, he can remove the case into this court by writ of error, and have the question he has thus raised decided here.