STATE *ex rel.* TILLMAN, Governor, *et al.* v. COOSAW MIN. CO.

*(Circuit Court, D. South Carolina. April 21, 1891.)*

1. FEDERAL COURTS—REMOVAL OF CAUSES—JURISDICTION—JUDICIAL NOTICE.
   Where a complaint in the state court alleges that complainants claim under a designated state act, not set out in full in the complaint, and that defendant's claim arises under a previous designated act, alleged to be contrary to the state constitution, the federal court, on defendant's petition for removal, on the ground that the later act was contrary to the United States constitution, as impairing the obligation of their contract under the former act, will take judicial notice of the acts in determining its jurisdiction.

2. SAME—PETITION FOR REMOVAL—RECORD.
   The petition for removal of a cause from a state to the federal court is part of the record, and will be considered by the federal court in determining its jurisdiction.

3. SAME.
   When the petition for removal to the federal court and the bond are filed in the state court, the jurisdiction of the latter ceases, and of the former immediately attaches.

4. SAME—COURTESY TO STATE COURT.
   Where the judge of the state court in vacation passes upon the petition for removal and bond, courtesy does not require the federal court to withhold action.

5. SAME—COMITY.
   The question of comity between the federal and state courts does not arise on removal of a cause.

In Equity.

*Y. J. Pope*, Atty. Gen., *Mitchell & Smith*, and *George S. Mower*, for plaintiffs.

*McCrady, Sons & Bacot* and *Smythe & Lee,* for defendant.

SIMONTON, J. The summons and complaint in this case were filed in the office of the clerk of Beaufort county in South Carolina on 23d March, 1891. The complaint sets forth the ownership by the state of the beds of Coosaw river, including that part of it which "lies opposite to and south of Chisolm's island," and in the phosphate and phosphatic deposits therein. That the Coosaw Mining Company, a joint-stock company, claims a perpetual grant to all such deposits in that part of Coosaw river, and the exclusive right to mine the same, which claim relators deny. That, notwithstanding such denial, the Coosaw Company continues to assert its claim, and hinders and obstructs the relators, who are the duly qualified and appointed board of phosphate commissioners, and all persons authorized by them, from mining in said territory. That it is necessary to dispose of this claim, which is based on a certain act of the general assembly of South Carolina, approved 20th March, 1876, (setting out the title of the act,) which act relators charge to be in conflict with the state constitution. That the deposits are of great value, variable, however, in price, and liable in this respect to be affected by the discovery and the production of phosphate rock elsewhere. Charges that the Coosaw Company has brought and threatens suits against persons licensed by plaintiffs to mine in this territory, and that this cloud on the state's title should be removed. The prayer is for a perpetual injunction against the Coosaw Company, and in the mean time a restraining order, and also for the appointment of a receiver. After the filing of the complaint an order was made by his honor, Judge ALDRICH, sitting in chambers at Aiken, containing a rule against the Coosaw Company to show cause before him, on 7th April next thereafter, why the injunction as prayed for be not granted, and why the receiver be not appointed. In the mean time a restraining order was issued, and a temporary receiver appointed without bond. The defendant was served with summons and complaint on 23d March, 1891. On 30th March, 1891, a petition was filed with the clerk of the court of common pleas for Beaufort county for the removal of the cause into this court, accompanied by a bond with good surety in the sum of $5,000. The court of common pleas for that county was then and is now in vacation. The next regular term will be held on 4th of May next. The defendant exhibited a copy of the petition and bond to Judge ALDRICH at Aiken on 31st March. What action he took does not appear. A copy of the summons and complaint, petition and bond, with exhibits certified by the clerk of the court of common pleas for Beaufort county, was filed in this court on 1st April. On the 6th day of April the regular term of this court began. On the 7th of April the Coosaw Company came into open court, and asked leave to file a return to the rule issued by Judge ALDRICH. Thereupon the Honorable Y. J. Pope, who is the attorney general of the state of South Carolina, and who appears on the record as plaintiffs' attorney, entered a qualified appearance for the plaintiffs, simply to test the jurisdiction of the court. At the same time he filed

in writing a suggestion to the court that the rule and the return thereto were then actually being heard before his honor, Judge ALDRICH, at Aiken, S. C.

At the threshold of this case plaintiffs submit two questions to the court:  *First.*  Has it jurisdiction of this case?  *Second.*  If it has jurisdiction, are there not considerations of courtesy and comity towards the state court which will induce it to withhold action?

Has this court jurisdiction of this case?  This will depend upon two questions:  Is the case removable from the state court to this court? Has it been removed?  The case cannot be removed unless it comes within the class of cases arising under the constitution of the United States, of which circuit courts of the United States are given jurisdiction by the first section of the act of congress of 1888.  25 St. at Large, 434.  Section 1 of that act gives to the circuit courts of the United States original cognizance concurrent with the courts of the several states of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, and arising under the constitution of the United States. The value of the matter in dispute here is beyond the sum stated.  The act makes no exception because of the character of the parties.  The sole question, therefore, is, does this case arise under the constitution of the United States?

The complaint does not anywhere state the authority upon which it is brought by these relators in the name of the state, nor how they became and are the duly appointed and qualified board of phosphate commissioners, nor how or when they were authorized to do the acts which it is charged the Coosaw Mining Company obstructs.  Nor does it mention or refer to any legislative action of the state of South Carolina with respect to the claim of the Coosaw Company to hold her grant. It does allege that the state is the sole owner of the disputed territory; that the Coosaw Mining Company claims a perpetual grant of the exclusive right to mine therein, based upon an act of the general assembly of that state, whose title and the date of whose approval are stated in the complaint, which the complaint says is invalid.  The petition for removal states that the relators are acting under and by the authority of an act of the assembly of this state, approved ——— December, 1890, giving its title at length; that the grant which they have, and which they charge is a contract between them and the said state, is impaired by said act of 1890.  That the said act is a violation of the constitution of the United States in sundry particulars, especially in that it impairs · the obligation of a contract.

There can be no doubt that if the question, whether the act of 1890 impairs the obligation of a contract, can be made to appear on that part of this record, which this court is at liberty to examine at this stage of the proceedings, the case is removable.  It is a federal question, arising under the constitution of the United States.  In the case of *Dartmouth College* v. *Woodward*, 4 Wheat. 518, the legislature of New Hampshire had passed an act materially amending the charter granted by the crown

to the trustees of Dartmouth College. It was claimed on the one side that the charter was a contract, and this was denied on the other. If it was a contract, the amending act impaired it. The supreme court of the United States took jurisdiction of this as a federal question, discussed whether the charter was a contract, and decided that it was. The decision of the supreme court of New Hampshire to the contrary was reversed, and the act was declared invalid. So, in this case, if it can be made to appear from that part of the record which the court is at liberty to inspect that the questions are distinctly made whether there did exist such a contract, and whether this act of 1890 impairs its obligation, then it is competent for this court to entertain and decide both questions. See *Bank* v. *Skelly*, 1 Black, 436; *Proprietors* v. *Hoboken Co.*, 1 Wall. 145. Not only so, this federal question would be the controlling question in the case. For ., on the one hand, the court should decide that there was such a contract, and that the act of 1890 impaired its obligation, every provision in that act giving any power or authority to these relators to interfere with the possession of the Coosaw Mining Company and its operations sanctioned by that contract, or to give licenses to any person to mine in the disputed territory, or to seek an injunction or a receiver, is null and void. On the other hand, if there be no such contract, or the act of assembly does not impair its obligation, the case of the relators must be sustained. So, the inquiry is, is this federal question presented to this court now? Where in the record must we look for it? The counsel for the plaintiffs, with great learning and force of argument, contend that in making this inquiry the court cannot go outside of the complaint; that the allegations of the petition for removal cannot be used in aid of this inquiry. On the other hand, the counsel for the Coosaw Company, with equal learning and force, insist that as they seek the jurisdiction, and as the plaintiffs seek to escape it, they must not depend upon the allegations of the complaint; but that it is not only incumbent upon them, it is their right, to show the grounds of jurisdiction, and that they can for this purpose use the allegations of the petition for removal.

We will inquire, first, confining ourselves to the complaint without any reference to the allegations of the petition for removal, does it appear that a federal question is involved in the case made by it? That is to say, suppose the parties are heard here on the complaint alone, without any answer or plea setting forth facts not in the complaint, would the federal question arise? Could the court entertain the question, was there a contract between the state and the Coosaw Company? Has the state by legislation sought to impair its obligation? There are certain matters in all causes of which courts will of themselves take notice, and which, therefore, need not be pleaded or proved. Wharton on Evidence (section 277) thus expresses it:

"Certain facts or conclusions from facts, however, may be noticed, which may be styled 'non-evidential,' from the fact that they are not proper objects of evidence, and that consequently they may be judicially noticed by the courts."

Story, in his Equity Pleading, (section 24;) says:

"On the other hand, the plaintiffs need not, and indeed should not, state in the bill any matters of which the court is bound, judicially, to take notice, or is supposed to possess full knowledge. Hence it need not state matters of law, * * * or recite public acts or laws, or aver facts, which the courts are bound, judicially, to know. * * * A strong illustration of this general rule may be found in the right and duty of the courts of the United States to take judicial notice * * * in an especial manner of all the laws and jurisprudence of the several states in which they exercise an original or an appellate jurisdiction."

1 Chit. Pl. 215, says:

"Public statutes and the facts which they recite or state must be noticed by the courts without their being stated in pleading, and it is only necessary to state facts which will appear to the court to be affected by the statutes."

And these text-writers are fully. sustained by the courts. "The law of any state of the Union, whether depending upon statutes or judicial opinion, is a matter of which the courts of the United States are bound to take notice without plea or proof." *Lamar* v. *Micou*, 114 U. S. 218, 5 Sup. Ct. Rep. 857. In *Owings* v. *Hull*, 9 Pet. 625, is an application of the rule. "The next objection," says the court, "was that the copy of the original bill of sale of the slaves to Hull, on record in the notary's office, was not evidence, unless the plaintiff accounts for the non-production of the original. The validity of this objection depends upon the consideration whether the non-production of the original was sufficiently accounted for. It was not accounted for by any proof offered on behalf of the plaintiff, and, unless the circuit court of the United States could judicially take notice of the laws of Louisiana, there was nothing before the court to enable it to say that the non-production of the original was accounted for. We are of the opinion that the circuit court was bound to take judicial notice of the law of Louisiana. * * * It is to be judicially taken notice of in the same manner as the laws of the United States are taken notice of in these courts." In *U. S.* v. *Randall*, Deady, 524, "the courts of the United States take judicial notice of the acts of congress, and they need not be set forth or specially referred to in any proceeding before them." In *Gardner* v. *Collector*, 6 Wall. 499, "the courts take judicial notice of the public statutes, and this notice extends, not only to the existence of the statute, but to the time when it takes effect, and to its true construction." In *Starr* v. *Moore*, 3 McLean, 354, "in this court it is not necessary to plead or prove a state statute." In *Beaty* v. *Knowler*, 4 Pet. 167, "the provision of the act of incorporation that it should be considered a public statute must be regarded in courts of justice, and its enactments must be noticed without being specially pleaded." See, also, *Cheever* v. *Wilson*, 9 Wall. 121; *Armstrong* v. *U. S.*, 13 Wall. 154. The public laws of a state must be known to and be in the mind of every judge exercising jurisdiction within that state, not only as to their existence, but as to their construction. When a right, privilege, or duty is given to or imposed upon any person, natural or artificial, by a public act, such person can pursue such right, privilege, or duty in the courts, and the courts will, without pleading, producing, or referring to the act, recognize and enforce it. It accompanies the

person into court, throwing light upon, explaining, sustaining the record; is, in effect, a part of the record. So in this case, when the five relators, styling themselves the "Board of Phosphate Commissioners," bring into court their complaint, or it comes before the court in any way, using the name of the state, concerning the use of the property of the state, asserting the right to control that property, and especially the right to interfere with the claim of the Coosaw Mining Company to property on which that company set up an exclusive privilege under grant, praying the assistance of the court to aid them in their control, protection, and disposition of the state's property, the courts are bound to take judicial notice of the act of 1890, which confers on them these powers, and to take such notice of its own motion. Not only would it be unnecessary, but it would be improper, to plead the statute, or to produce it as their authority. Story, Eq. Pl. § 24. So, also, the court will take judicial notice of the act of 1876, specially mentioned in the pleading. The court must open the statute book, and look into these acts. In the language of MARSHALL, C. J., in *Marbury* v. *Madison*, 1 Cranch, 179: "If they can open it at all, what part of it are they forbidden to read?" Thus, there are present before the court with this complaint two acts of the legislature of South Carolina. One of them, say the defendants, creates a contract between them and the state, giving them certain exclusive rights in state territory. The other creates the board which the relators claim to be, by its several provisions, seeks to clothe them with powers impairing these contract rights of defendants, and by its general repealing clause seeks to destroy them altogether. Thus there is made in this way, going no further than the complaint, and the acts which in contemplation of law accompany and illustrate it, an issue which raises a federal question, and would be proper for the jurisdiction of this court.

But is the court, in seeking to ascertain whether a cause is removable, confined to the allegations of the complaint? Is it precluded from examining the petition for removal? When a petition for removal and bond are filed in the state court the cause is removed. *Steam-Ship Co.* v. *Tugman*, 106 U. S. 118, 1 Sup. Ct. Rep. 58. When the record is filed in this court the case will be remanded to the state court, if it shall appear to the satisfaction of the circuit court of the United States "that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of the said circuit court." Act 1875, Supp. Rev. St. 175. And this question the circuit court determines for itself finally. Act 1888, 25 St. at Large, 435. The court looks into "the dispute or controversy." These words necessarily require the hearing of both sides, not the *ex parte* statement of one side. So, under the act of 1789, in all cases of removal the petition for removal is a part of the record, and is examined by the court. *Insurance Co.* v. *Pechner*, 95 U. S. 183. And under the act of 1875 it was an essential part of the record, and was always examined in determining the removability of a suit. *Carson* v. *Dunham*, 121 U. S. 426, 7 Sup. Ct. Rep. 1030. In this case it is said that the petition for removal performs the office of pleading. And in *Water Co.* v. *Keyes*, 96 U. S. 203,

such pleading is required.    Indeed, this must be so from the very nature of the removal acts.    They are remedial in their character.    The judicial power was granted to the courts of the United States for the common and equal benefit of all the people of the United States.    "It was not to be exclusively exercised for the benefit of parties who might be plaintiffs, and who would elect the national forum, but also for the protection of defendants who might be entitled to try their rights and assert their privileges before the same forum."    *Martin* v. *Hunter*, 1 Wheat. 348. If in determining the character of the dispute or controversy we are confined to the allegations of the complaint, this right of defendant to come into the national forum will depend, not on the dispute or controversy, but on the skill of the pleader who draws the complaint.    A plaintiff who goes into the state court in a case which really and substantially involves a dispute or controversy within the jurisdiction of the United States court seeks to avoid this court.    He carefully eliminates from his pleading every fact which may tend to give jurisdiction to this court. As he goes into a court of general jurisdiction, he can avoid these facts. On the face of his complaint nothing can be seen showing jurisdiction in this court.    He may be preparing a suit between citizens of different states, or against an officer of the United States for acts done in an official capacity, or for lands held under grants from different states; indeed, on any other of the many grounds for which this court could hold jurisdiction.    If the court can look only into the complaint, it can never know any fact which can prevent it from remanding the case.    The acts of congress "presume" (whether right or wrong we do not inquire) "that state attachment, state prejudices, state jealousies, state interests, might sometimes obstruct or control, or be supposed to obstruct or control, the regular administration of justice."    *Martin* v. *Hunter, supra*.    Hence the provision removing federal causes into the national courts.    But if the position of the plaintiffs be correct, a defendant, however strong his convictions, however conclusive his case, however clear his right, must stand mute before the federal tribunal whose aid he seeks, and must be remanded to the encounter of these attachments, prejudices, jealousies, and interests, dependent upon the want of skill or the grace of his adversary.

It is supposed that the uniform practice of federal courts in treating the petition for removal as part of the record has been changed by the act of 1887–88.    Under the act of 1875 either party could remove a cause; and a suit could be brought in a state court in the subject-matter of which the United States court could not have jurisdiction, and the plaintiff could at once remove it, and under the removal act create jurisdiction.    Such was the case with a suit brought by a citizen of one state, the assignee of an unnegotiable instrument, against the maker, a citizen of another state, and of the same state as the assignor.    This was an abuse of the privilege of removal.    Congress by the act of 1887–88 corrected the abuse.    None but a defendant can remove.    No suit can be removed which is not within the original jurisdiction of the circuit court.    But no change was made in the practice of removal, although this was well

known to congress. Indeed, in amending the act of 1875, congress retained the fifth section, and confirmed it. The time for the application for removal is changed, and all else is retained. The plaintiffs contend that if they could not have originally brought their suit in the federal court it cannot be removed. But the removal act requires the court to examine into the dispute or controversy, and to determine if that is within its jurisdiction. When a suit "brought originally into this court," the plaintiff must on the face of his complaint show jurisdiction. If he does not, the complaint will be dismissed. He may be a citizen of a different state from the defendant. He may hold lands under grant from another state. If he fail to show this on the record, he is dismissed. So, when it is sought to remove a case from the state to the federal court, unless the defendant can in his record show jurisdiction, he will be dismissed. But as the question is as to the "dispute or controversy," if he can show in his petition that, notwithstanding the skillful statements and omissions of the plaintiff, the suit really and substantially involves a dispute or controversy properly within the jurisdiction of this court, he will not be dismissed. This distinction clearly appears in *Metcalf* v. *City of Watertown*, 128 U. S. 589, 9 Sup. Ct. Rep. 173. It will be noticed that the question is, does the suit involve a dispute or controversy substantially and really within this jurisdiction? That is to say, in its nature and essence, not whether as an incident to the cause, a matter which might become a part of a defense *dehors* the record may or may not raise a federal question; but whether the real, substantial, fundamental issue made in the record, including the petition, is one over which this court by the law under the constitution has jurisdiction. To this extent, and no further, I concur with Judge SHIRAS in *Dey* v. *Chicago*, 45 Fed. Rep. 84. Several courts of the United States since the act of 1887–88 treat the petition as part of the record. *State* v. *Railroad Co.*, 33 Fed. Rep. 725; *Austin* v. *Gagan*, 39 Fed. Rep. 626; *McDonald* v. *Salem*, 31 Fed. Rep. 577; *Johnson* v. *Insurance Co.*, 35 Fed. Rep. 374. See, also, Fost. Fed. Pr. § 385. It appearing from the record in this case that the suit really and substantially involves a dispute or controversy whether the state of South Carolina has not passed an act impairing the obligation of a contract, alleged to have been made between the said state and the defendant, the cause presents a question within the original jurisdiction of this court, (*Railroad Co.* v. *California*, 118 U. S. 113, 6 Sup. Ct. Rep. 993,) and is removable.

The next question is, has the cause been removed? This being a removable case, as soon as the petition and bond were filed in the state court its jurisdiction absolutely ceased, and that of this court immediately attached. *Railroad Co.* v. *Mississippi*, 102 U. S. 135; *Railroad Co.* v. *Koontz*, 104 U. S. 5; *Steam-Ship Co.* v. *Tugman*, 106 U. S. 118, 1 Sup. Ct. Rep. 58; *Crehore* v. *Railway Co.*, 131 U. S. 244, 9 Sup. Ct. Rep. 692.

The last question which we are asked to examine is, are there not considerations of comity and courtesy which would induce the court to withhold action? The petition for removal and bond were filed in the court

of common pleas for Beaufort county some days before the regular term of this court. Although it was the duty of the defendant removing to bring his case to this term, (*Brown* v. *Murray*, 43 Fed. Rep. 614,) I would, in courtesy to the state court, have withheld action until it could meet and receive the petition. The course of Judge GRESHAM in *Shedd* v. *Fuller*, 36 Fed. Rep. 609, would have been followed. But it has been brought to the attention of the court that the petition and bond were presented to the state judge charged with the case, and that he passed upon it. No discourtesy to the state court can now be supposed. Its action cannot in any way affect the course of this court in determining upon the right of removal.

With regard to considerations of comity, they have no place here. The question is one as to the right of the citizen, not as to the conduct of the court. Had an action been brought in this court, after the jurisdiction of the state court had been engaged over the subject-matter in another action, then the court could properly consider whether it ought not to leave the parties to the tribunal first charged with the settlement of the dispute. But this is a case brought in the state court, removed into this court. In entertaining the petition for removal, this court cannot mean any reflection upon the state court. It simply considers whether the petitioners have the right to the removal. If they have, refusing it would be a denial of right.