THE STATE EX REL. THE ATTORNEY GENERAL vs. FROST, Receiver.

*January 7—January 25, 1902.*
*February 18—April 1, 1902.*

*Supreme court: Jurisdiction: Leave to bring original action: Restraining execution of judgment of federal court: Constitutional law: Federal courts: Removal of causes: Nature and subject of controversy: Suit of a civil nature: Amount in dispute: Suits arising "under the constitution or laws of the United States:" Federal question, when presented by pleading: Residence, as affecting jurisdiction: Personal privilege: Waiver: Pleading.*

1. Where a federal court in a suit to foreclose a mortgage, given on a railroad constructed by a corporation organized under the laws of Wisconsin and lying wholly within that state, makes an order which, if carried out, will dismantle and destroy the railroad, such grave questions are presented as warrants granting leave to the attorney general to bring an original action in the supreme court to enjoin the receiver from proceeding under such order.

2. In such case, whatever be the attitude of the federal court or its officers, when there is brought to the attention of the

supreme court a state of facts, from which it may be seriously argued that the federal court has, in excess of its jurisdiction, invaded the rights, prerogatives, or sovereignty of the state, the state court will examine and decide such questions in its own way, and will, if necessary, preserve the *status quo* by the exercise of the powers granted it by the state constitution.

3. A proceeding .by the state, in its sovereign capacity, to accomplish a purpose other than the enforcement of its penal laws,— to enjoin a receiver of a railroad constituting one of the highways of the state, and constructed under a franchise granted by it, from obeying an order of a federal court directing its destruction by dismantling the same and selling the rails and rolling stock,—is "of a civil nature" within the meaning of ch. 866, 25 U. S. Stats. at Large, conferring upon the circuit courts of the United States jurisdiction of suits "of a civil nature," and authorizing the removal of such suits into those courts when not originally brought therein.

4. In such case, where the materials composing such railroad are salable for many thousand dollars, the right to have such railroad continued in existence as a public highway, asserted by the state, and the rights of which it is sought to deprive the receiver, are each capable of a pecuniary measurement, and entitle the receiver to .have the action removed into the federal courts, within sec. 2, ch. 866, 25 U. S. Stats. at Large, requiring that, in order to authorize the removal of a cause to the federal courts, the matter in dispute shall exceed $2,000, exclusive of interest and costs.

5. In such case, the *quantum* of pecuniary value need not appear by the original pleading of the plaintiff, but may be shown by and in the petition for removal.

6. A controversy which necessarily raises the power or duty of a receiver, appointed by a federal court, to perform any acts expressly commanded, whether that power and duty is regulated by an express statute or by the judgment, decree, order, or process of such court, arises under the constitution and laws of the United States within ch. 866, 25 U. S. Stats. at Large, conferring the right to such removal in cases arising under the constitution or laws of the United States.

7. On an information, filed in the supreme court by the attorney general in behalf of the state, it was sought to enjoin a receiver and special master in chancery, appointed by a federal court, from destroying a railroad by dismantling it and selling the materials of which it was composed, which the receiver threatened to do under the commands of an order or decree of such· federal court. The information fully set forth the

grounds on, and capacity in which, the receiver was threatening to act, and alleged their insufficiency. It not only questioned the decree, but the authority of the receiver thereunder, and assailed the powers and jurisdiction of the court from which it issued. *Held*, that the information, in presenting for determination the question of the power and duty of the receiver and special master as an officer of a federal court, brought into controversy the validity of an express order of that court, and presented a question under the constitution and laws of the United States, within the rule that, in order to entitle the defendant to removal from the state court, the federal question presented must appear from the plaintiff's statement of his case in his original pleading.

8. In such case it is no objection to the removal of the action that the state is proceeding in its sovereign or governmental capacity, and therefore cannot be drawn into the courts of another sovereignty against its will, provided the federal court would otherwise have jurisdiction of the cause.

9. The ultimate authority to decide finally and conclusively upon the jurisdiction of a federal court, or upon the validity of one of its decrees or of a federal statute, is in the federal courts, and the right to consider such question must be yielded up by the state courts in any case covered by the federal removal statute.

10. The requirement that suits in federal courts against citizens of another state shall be brought in the district of their residence, is a mere personal privilege, which may be waived, and is not a question of jurisdiction of the court.

11. Where the information filed in the state court, under which it was sought to enjoin a receiver, acting under an order of a federal court, from dismantling a railroad for the purpose of selling the materials of which it was composed, clearly shows the subject in dispute, and where the petition for the removal of the cause to the federal courts alleges, that "the amount involved therein, exclusive of interest and costs, exceeds the sum of two thousand dollars," such allegation sufficiently makes the required *quantum* of the dispute apparent, within the calls of ch. 866, 25 U. S. Stats. at Large, authorizing the removal of causes "where the matter in dispute exceeds the sum or value of $2,000," etc.

12. Whether such action can be removed for the reason it is ancillary to the foreclosure action pending in such federal court, not decided.

On January 7, 1902, application was made in this court for leave to commence an action on behalf of the state against *Albert C. Frost,* as receiver of the Washburn, Bayfield & Iron River Railway Company. An order to show cause was issued, returnable January 14, and the motion was then granted.

For the motion there were briefs by *Attorney General, A. W. McLeod,* district attorney of Bayfield county, *H. H. Hayden* and *H. B. Walmsley,* of counsel, and oral argument by the *Attorney General* and *Mr. McLeod.*

They contended, *inter alia,* that a railroad is a highway, and, so far as constructed and put in operation, must be maintained and operated until the state consents otherwise; its charter is a contract in perpetuity with the state to that effect. *People v. Kerr,* 27 N. Y. 188, 205; *Barton v. Barbour,* 104 U. S. 126, 135; *Joy v. St. Louis,* 138 U. S. 1; *Att'y Gen. v. West Wisconsin R. Co.* 36 Wis. 466; *Rex v. S. & W. R. Co.* 2 Barn. & Ald. 646; *People v. A. & V. R. Co.* 24 N. Y. 261; *Att'y Gen. v. Erie & K. R. Co.* 55 Mich. 15; *State v. Cent. Iowa R. Co.* 71 Iowa, 410; *People ex rel. Walker v. L. & N. R. Co.* 120 Ill. 48; *State v. H. & N. H. R. Co.* 29 Conn. 538; *U. S. ex rel. Hall v. U. P. R. Co.* 2 Dill. 527; *State ex rel. Grinsfelder v. Spokane S. Ry. Co.* 19 Wash. 518. The application is strictly inside the boundaries of the field of the writ of injunction as laid down in *Att'y Gen. v. R. R. Cos.* 35 Wis. 425, and *In re Court of Honor,* 109 Wis. 625. *Joy v. St. Louis,* 138 U. S. 1; *Barton v. Barbour,* 104 U. S. 126, 135; *Union T. Co. v. Ill. M. R. Co.* 117 U. S. 434, 455; 15 Am. & Eng. Ency. of Law (2nd ed.), 350; *Kneeland v. Am. L. & T. Co.* 136 U. S. 89; *Olcott v. Sup'rs,* 16 Wall, 678; *Matter of Niagara & W. R. Co.* 108 N. Y. 375, 385; 2 High, Inj. §§ 1309, 1554. The order of the federal court directing the destruction of the railroad cuts no figure in this application; the receiver may plead it in his answer in this suit, and it will then be insufficient.

*State v. C., R. I. & P. R. Co.* 61 Neb. 545; *Reynolds v. Stockton,* 140 U. S. 254; *Mundy v. Vail,* 34 N. J. Law, 418; *Corwithe v. Griffing,* 21 Barb. 9; *Unfried v. Heberer,* 63 Ind. 67; *Ex parte Lange,* 18 Wall. 163, 178; *State ex rel. Drake v. Doyle,* 40 Wis. 174; *McGourkey v. T. & O. R. Co.* 146 U. S. 536; *Bronson v. R. Co.* 2 Black. 524; *Ray v. Law,* 3 Cranch, 178; *Forgay v. Conrad,* 6 How. 203; *Central T. Co. v. Grant L. Works,* 135 U. S. 207; *Bronson v. Schulten,* 104 U. S. 410, 415. The state has no remedy in the federal courts, for, not being a party, it cannot appeal; prohibition and *mandamus* can only be had in aid of appeal, and it cannot intervene. *Ex parte Gordon,* 1 Black, 503; *U. S. ex rel. Fisher v. Williams,* 67 Fed. Rep. 384; *Bronsen v. La Crosse R. Co.* 1 Wall. 405; *U. S. ex rel. Mudsill Min. Co. v. Swan,* 65 Fed. Rep. 647; *Ex parte Tom Tong,* 108 U. S. 566; *Wisconsin v. Duluth,* 2 Dill. 406; *Georgia v. Brailsford,* 2 Dallas, 402. The state has no remedy by original suit in the supreme court of the United States. *Wisconsin v. Pelican Ins. Co.* 127 U. S. 265; *Florida v. Anderson,* 91 U. S. 667.

*Contra,* there was a brief by *Charles B. Wood* and *Horace S. Oakley,* and oral argument by *Mr. Oakley.* They contended, *inter alia,* that since the Judiciary Act of 1875, the federal courts have jurisdiction of cases in which a state is a party when the question is one involving the constitution or laws of the United States. *Ames v. Kansas,* 111 U. S. 449; *Southern P. R. Co. v. California,* 118 U. S. 109; *Postal T. C. Co. v. Alabama,* 155 U. S. 482. The receiver, being appointed by a federal court, was appointed and is executing his duties under the authority of the constitution and laws of the United States, and hence the application involves a question under the constitution and laws of the United States, and such as is within the exclusive jurisdiction of the federal courts. *Texas & P. R. Co. v. Cox,* 145 U. S. 593; *Tennessee v. U. & P. Bank,* 152 U. S. 454, 472; *Bock*

*v. Perkins,* 139 U. S. 628; *Landers v. Felton,* 73 Fed. Rep. 311–313; *Bausman v. Denny,* 73 Fed. Rep. 69; *Wood v. Drake,* 70 Fed. Rep. 881. Since the federal court has already jurisdiction of the *res* of the controversy and is open to the state of Wisconsin, if it desires to assert any right it has or thinks it may have, the supreme court of Wisconsin, from comity, will decline to take jurisdiction. *Farmers' L. & T. Co. v. Lake St. E. Ry. Co.* 177 U. S. 51; *Leadville C. Co. v. McCreery,* 141 U. S. 475; *Heidritter v. E. O. C. Co.* 112 U. S. 302; *Holland T. Co. v. I. B. & T. Co.* 85 Fed. Rep. 865; *Phelps v. Mut. R. F. Life Asso.* 50 C. C. A. 339.

The application was granted and the following opinion was filed January 25, 1902:

WINSLOW, J. Application has been made to this court by the attorney general for leave to bring an action in equity in this court on behalf of the state for the purpose of perpetually enjoining *Albert C. Frost,* as receiver of the Washburn, Bayfield & Iron River Railway Company, from ceasing to operate said railroad, and from tearing up and destroying the roadbed thereof. At the time of making such application the attorney general presented to the court his proposed complaint or information, together with a considerable number of affidavits substantiating its averments of fact, from all of which it appears that the Washburn, Bayfield & Iron River Railway Company is a railway corporation organized under the laws of this state, and that prior to June, 1898, it constructed a freight and passenger railway about thirty-five miles in length, wholly within the limits of Bayfield county, and operated the same for some time as a common carrier; that said railway was mortgaged to secure bonds amounting to $237,000, and that an action for the foreclosure of said mortgage was afterwards begun by the trustees named therein in the circuit court of the United States for the Western district of Wisconsin, in which action

defendant was appointed receiver, and a decree of foreclosure was rendered July 5, 1901, which directed that the receiver, who was thereby appointed a special master in chancery for the purpose, make sale of the main line, as an entirety, at a price not less than $225,000, which sum was on July 23, 1901, changed by modification of the decree to $275,000; that the receiver, in his capacity as special master aforesaid, offered the property for sale at said sum of $275,000, but received no bids, and so reported to the United States court aforesaid, and on October 12, 1901, that court modified the judgment so as to direct the said *Frost,* as special master aforesaid, to tear up the rails and sell the same for whatever he could get; and that the receiver is about to carry out such judgment.

It is said by the attorney general that so much of the decree of the federal court as directs the receiver to tear up and dispose of the rails of the railroad in question is entirely beyond the jurisdiction of the United States court; that such a judgment is, in effect, the destruction of a corporate franchise granted by the *state of Wisconsin;* that this railroad is a public highway, which the company itself would have no right to destroy or cease to operate without the consent of the state, and that such a highway cannot be thus destroyed in a mere foreclosure action to which the state is not a party, and, as it is argued, cannot be a party; that such corporate franchises can only be affected in a proper action brought in the name of the state upon leave granted by this court,—citing Stats. Wis. 1898, sec. 3241. On the other side it is claimed that the remedy of the state, if it has any, is by proceeding to intervene in the foreclosure action; that the United States court has full and complete jurisdiction to direct the sale of the mortgaged property as in its judgment seems best; and that, upon principles of judicial comity, no other court should interfere with that court which has first obtained jurisdiction.

The questions presented are grave and important ones. They call for most serious and careful investigation and research. They should not be decided upon first impressions. We intimate no opinion upon them, but we feel that their importance demands that they may be adequately and fully presented both on behalf of the state and on behalf of the receiver. In order that they may be so presented, we have ordered that the attorney general be granted leave to commence his proposed action against said *Frost,* as receiver and as special master, and that said *Frost* be ordered to desist from tearing up the railroad pending such action. We entertain the highest respect for the federal court and its learned judges. In taking the present action, we have no intention of interfering with the jurisdiction of that court. We have every confidence that not only the receiver and his counsel, but the federal court as well, will cheerfully recognize that the questions involved are so important and doubtful that this court should have an opportunity to consider and decide them without unseemly haste, and without apprehension that the *status quo* will be changed in the meantime. But while entertaining this belief, it is due to the dignity of this court to say that, whatever be the attitude of the federal court or its officers, when there is brought to our attention by the highest law officer of the commonwealth a state of facts from which it may be seriously argued that the federal court has, in excess of its jurisdiction, invaded the rights and prerogatives or sovereignty of the state, this court will not hestitate to examine and decide such questions in its own way, and will, if necessary, preserve the *status quo* by the exercise of the powers granted to it by the constitution and the laws.

After the commencement of the action the defendant filed a petition for its removal to the circuit court of the United States for the Western district of Wisconsin.

On April 1, 1902, the petition was granted. The facts are thus stated by DODGE, J.:

This is an original information filed in this court by the *State of Wisconsin* in its sovereign capacity, to enjoin the threatened destruction of one of the highways of the state, to wit, a certain railroad constructed in 1895 or 1896 by the Washburn, Bayfield & Iron River Railway Company, a railroad corporation organized under the laws of this state on August 2, 1895. By the information it is made to appear that a mortgage made by said railroad company in 1895 upon all of its property, including franchises, held by a nonresident of the state of Wisconsin, has been in process of foreclosure in the circuit court of the United States for the Western district of Wisconsin since some time in 1898, and that in said action receivers have been appointed and installed, who have taken possession of said road and operated it, the last of whom is the defendant, *Albert C. Frost,* and that a decree of foreclosure was rendered and entered July 5, 1901, directing the sale of all of its property for cash by the defendant, *Albert C. Frost,* "receiver and special master in chancery of that court," as an entirety, in one parcel, with directions as to the detail of the sale and disposition of the proceeds; said decree reserving to the court the right to make such further orders at its foot as may seem just and proper. On July 23d the court fixed as an upset or *minimum* price at such sale, $275,000. On October 12, 1901, the defendant, as special master, made report of entire inability to sell in accordance with the terms of the decree, notwithstanding efforts to do so, and advised the court that, in his judgment, it is impossible to sell the railroad as an entirety; that the only disposition which can be made is in parts and parcels, the rails to be taken up, and, together with all the motive power, equipment, machinery, furniture, and fixtures, sold at such time or times and in such manner and upon such terms as the court may direct. Thereafter, on the same day,

upon the said master's report and various other showings, including the allegation that said railroad could not be operated, save at a loss, and that the receiver had no moneys in his hands with which to operate it, and was unable to further borrow any moneys, the said United States circuit court entered a further judgment or decree setting aside certain of the commands of the decree of July 5th with reference to method and price of sale, which subsequent order or decree authorized and directed "said special master, *Albert C. Frost,*" to forthwith proceed to take up all of the rails and fastenings of the railroad, and get the same ready for immediate sale, and to sell for cash all the rails, motive power, rolling stock, equipment, machinery, tools, furniture, and fixtures, and all other personal property, in parcels, as his judgment shall dictate. It also authorized *Albert C. Frost,* as receiver, to discontinue the operation of said railroad. The peril of destruction of one of the highways of the state, urged by the information as ground for injunctional protection, is that the defendant, in obedience to this last decree, is about to tear up and remove the rails from the roadbed of said railway. The information was permitted to be filed by an order of this court, accompanied by a statement of its reasons, filed January 25, 1902 (*ante,* p. 628), and having been accordingly filed, and process served upon the defendant, the latter, before the time for answering expired, filed in this court a petition for removal of the action into the circuit court of the United States for the Western district of Wisconsin, by which petition it is alleged that the suit is of a civil nature; that the amount involved therein, exclusive of interest and costs, exceeds the sum of $2,000, and that all the acts done or threatened by the defendant are pursuant to the orders of the said circuit court as its receiver and special master, and his possession, control, and power of disposal of the property are derived and asserted solely from the authority of the circuit court of the United States aforesaid, and that this

action arises under the constitution and laws of the United States, in several particulars set forth, in that it questions the jurisdiction and power of the United States circuit court to make and enforce its several orders, and questions the validity and legal effect thereof, and the legal power and authority conferred upon the defendant thereby under the laws of the United States; and that it further involves the force and effect of the act of congress of March 3, 1893, regulating the manner of sale of real and personal property under decrees of the United States court, and the provision of the constitution of the United States that such constitution, and laws made in pursuance thereof, shall be the supreme law of the land. Upon that petition we have heard argument.

For the petitioner there was a brief by *Charles B. Wood* and *Horace S. Oakley,* solicitors, and *G. W. Kretzinger* and *M. F. Gallagher,* of counsel, and oral argument by *Mr. Gallagher* and *Mr. Kretzinger.* They contended, *inter alia,* that since the Judiciary Act of 1875, a suit begun by a state may be removed to the proper circuit court of the United States, if it involves a question arising upon the constitution or laws of the United States. *Railroad Co. v. Mississippi,* 102 U. S. 135; *Ames v. Kansas,* 111 U. S. 449; *Stone v. South Carolina,* 117 U. S. 430; *Southern P. R. Co. v. California,* 118 U. S. 109; *Postal T. C. Co. v. Alabama,* 155 U. S. 482; *Arkansas v. K. & T. C. Co.* 96 Fed. Rep. 353. *Georgia v. Brailsford,* 2 Dall. 415; and *Wisconsin v. Duluth,* 2 Dill. 406, were decided before the passage of the Judiciary Act of 1875, and are no longer authority. *Ames v. Kansas,* 111 U. S. 449. If one federal question is involved, if that is a single ingredient of the mass, the cause is removable. *Tennessee v. Davis,* 100 U. S. 257; *Railroad Co. v. Mississippi,* 102 U. S. 135; *Osborn v. Bank of U. S.* 9 Wheat. 738, 821; *Mayor v. Cooper,* 6 Wall. 247; *Western Union T. Co. v. National T. Co.* 19 Fed. Rep. 561; *Miller v. Wattier,* 24 Fed. Rep. 49; *Connor v. Scott,* 4 Dill. 242; *Omaha H. Ry. Co. v.*

*Cable T. Co.* 32 Fed. Rep. 727. It is not necessary that the
information filed should state that a federal question is in-
volved, or that any right is claimed or derived under any law
of the United States. It is sufficient if, upon the facts stated
therein, it appears that there must be controversy as to the ap-
plicability, construction, effect, or operation of a federal law.
Block's Dillon, Removal, § 111; *Los Angeles F. & M. Co. v.
Hoff,* 48 Fed. Rep. 340; *Gibbs v. Crandall,* 120 U. S. 105;
*Butler v. Shafer,* 67 Fed. Rep. 161. The cause involves the
validity and effect of a decree of the circuit court of the
United States, jurisdiction to enter which is derived from and
defined by the constitution and laws of the United States.
*Johnson v. New Orleans Nat. B. Asso.* 33 La. Ann. 479;
*Leslie v. Brown,* 32 C. C. A. 556; *Crescent City L. S. Co. v.
Butcher's Union S. H. Co.* 120 U. S. 141; *First Nat. Bank v.
Society for Savings,* 25 C. C. A. 466; *Northern Pacific R.
Co. v. Amato,* 144 U. S. 465; *Senior v. Pierce,* 31 Fed. Rep.
625; *Leadville C. Co. v. McCreery,* 141 U. S. 475; *Keary v.
Farmers' & M. Bank,* 16 Peters, 89; *Wayman v. Southard,*
10 Wheat. 23. The question having arisen as to the legality
of the acts of defendant, acting under, and justifying those
acts by process issued from a federal court, that court may
take jurisdiction of the cause, either originally, or on removal
from a state court. *Wood v. Drake,* 70 Fed. Rep. 881; *Son-
nentheil v. Christian Moerlein B. Co.* 172 U. S. 401; *Sowles
v. Witters,* 46 Fed. Rep. 497; *Bachrack v. Norton,* 132 U. S.
337; *Eighmy v. Poucher,* 83 Fed. Rep. 855; *Buck v. Colbath,*
3 Wall. 334; *Tennessee v. Davis,* 100 U. S. 257; *Keihl v.
South Bend,* 22 C. C. A. 618; *Ellis v. Norton,* 16 Fed. Rep.
4; *In re Naegle,* 135 U. S. 1. A distinct and sufficient ground
for removal is the fact that the suit involves the contract of a
receiver appointed in a pending case in the federal court, and
it is therefore, in contemplation of law, a part and appendage
of the suit in the federal court, and the facts conferring juris-
diction in the original suit will be attributed to this suit, in

order to bring it within the operation of the removal acts. *Washington v. N. P. R. Co.* 75 Fed. Rep. 333; *White v. Ewing,* 159 U. S. 36; *American Asso. v. Hearst,* 7 C. C. A. 598; *Carpenter v. N. P. R. Co.* 75 Fed. Rep. 850; *Jewett v. Whitcomb,* 69 Fed. Rep. 417; *Evans v. Dillingham,* 43 Fed. Rep. 177; *Hardwick v. Kean,* 95 Ky. 563; *American Nat. Bank v. National B. & C. Co.* 70 Fed. Rep. 420; *Rouse v. Honsby,* 161 U. S. 588; *Moran v. Sturges,* 154 U. S. 256. A state can possess no right, proprietary or governmental, which is not subject to the operation of the constitution of the United States, the laws of congress passed in pursuance thereof, and the orders and decrees of federal courts entered within their sphere of action. *In re Debs,* 158 U. S. 579; *In re Neagle,* 135 U. S. 62; *Ex parte Siebold,* 100 U. S. 392. A state cannot put into its constitution or statutes any provision which will diminish or impair the jurisdiction of the courts of the United States. *In re Jarnecke Ditch,* 69 Fed. Rep. 163; *In re Stutsman Co.* 88 Fed. Rep. 341; *Scarl v. School Dist. No. 2,* 124 U. S. 197; *Black v. Black,* 74 Fed. Rep. 978; *Colorado M. R. Co. v. Jones,* 29 Fed. Rep. 193; *Marshall v. Holmes,* 141 U. S. 598. The question as to the competency of the federal court to grant and enforce the relief here prayed is not open for consideration in the state court on the application to remove. *Barrow v. Hunton,* 99 U. S. 85; *Marshall v. Holmes,* 141 U. S. 589. The amount in controversy exceeds in value $2,000. *Postal T. C. Co. v. Southern R. Co.* 88 Fed. Rep. 803; *Weber v. Traveler's Ins. Co.* 45 Fed. Rep. 657; *Scott v. Donald,* 165 U. S. 107; *Maffett v. Quine,* 95 Fed. Rep. 199; *Humes v. Ft. Scott,* 93 Fed. Rep. 857; *Hennessy v. Hermann,* 89 Fed. Rep. 669; *Nashville, C. & St. L. R. Co. v. McConnell,* 82 Fed. Rep. 65.

For the plaintiff there were briefs by the *Attorney General,* and *A. W. McLeod,* district attorney of Bayfield county, *H. H. Hayden* and *H. B. Walmsley,* of counsel, and oral argument by the *Attorney General* and *Mr. Walmsley.* They

·contended, *inter alia,* that a question vital to the sovereignty
·of a nation or a people can only be submitted to and deter-
mined by that sovereign. Story, Conflict Laws, chs. 2, 12;
Wharton, Conflict Laws, ch. 14, and §§ 4, 108, 833; 3 Am. &
Eng. Ency. of Law, 499; *Wisconsin v. Pelican Ins. Co.* 127
U. S. 265; *Ex parte Lange,* 18 Wall. 163–178. The United
States and the several states are separate and distinct sover-
·eignties, acting independently of each other, within their re-
·spective spheres on matters pertaining to their sovereignty.
*Collector v. Day,* 11 Wall. 124. The federal government has
never received from the sovereign people of the sovereign
·states the right to inquire into or enforce the laws of the sep-
·arate sovereign states pertaining to their respective sover-
·eignties. Each state, within its own borders and jurisdiction,
has all the powers and attributes of sovereignty which have
*not been* delegated by the several states through the United
States constitution to the United States, and all powers not so
delegated, and not specifically prohibited in the federal con-
·stitution to the several states, are specifically reserved to the
states respectively. U. S. Const. art. X; *Collector v. Day,* 11
Wall. 124; *Rhode Island v. Massachusetts,* 12 Peters, 720;
*Pennoyer v. Neff,* 95 U. S. 714, 722; *Norris v. Doniphan,* 4
Met. (Ky.), 385; *Warwick v. Bettman,* 102 Fed. Rep. 127.
Interference by removal would be a clear attempt of the fed-
·eral court to control a *sovereign,* which federal courts have no
power to do. *Cherokee Nation v. Georgia,* 5 Peters, 1, 20;
*Georgia v. Stanton,* 6 Wall. 50. The railroad in question is
·a *public highway* of Wisconsin, *constructed by the state,* and
in which private corporations and individuals have no interest
·or right whatever, except a franchise to operate the same for
the public use, and collect reasonable charges for such public
·service. *Talcott v. Pine Grove,* 1 Flippin, 120; *Erie & N. E.
R. Co. v. Casey,* 26 Pa. St. 287, 308; *East Alabama R. Co.
v. Doe,* 114 U. S. 340, 350; *Philadelphia v. P. W. & B. R.
Co.* 33 Pa. St. 41; *Junction R. Co. v. Philadelphia,* 88 Pa.

St. 424; *Buncombe Co. v. Tommey,* 115 U. S. 122, 128; *Raleigh & G. R. Co. v. Davis,* 2 Dev. & Bat. 151; *Nat. F. & P. Works v. Oconto W. Co.* 52 Fed. Rep. 43; *People v. Kerr,* 27 N. Y. 188, 205; *Joy v. St. Louis,* 138 U. S. 1; 15 Am. & Eng. Ency. of Law (2d ed.), 350; *Union T. Co. v. Ill. M. R. Co.* 117 U. S. 434, 445; *Dey v. C. M. & St. P. R. Co.* 45 Fed. Rep. 82; *Olcott v. Sup'rs,* 16 Wall. 678; *Matter of Niagara Falls & W. R. Co.* 108 N. Y. 375, 385; *Pine Grove v. Talcott,* 19 Wall. 666, 678; *Kneeland v. Am. L. & T. Co.* 136 U. S. 89. By the laws of Wisconsin, when once constructed and put in operation, a railroad of that state must be *maintained and operated* until the state consents otherwise; its charter is a contract, to that effect, with the state in perpetuity. *Att'y Gen. v. West Wis. R. Co.* 36 Wis. 466; *Rex v. S. & W. R. Co.* 2 Barn. & Ald. 646; *Att'y Gen. v. E. & K. R. Co.* 55 Mich. 15; *People v. A. & V. R. Co.* 24 N. Y. 261; *State v. Cent. Iowa R. Co.* 71 Iowa, 410; *People ex rel. Walker v. L. & N. Co.* 120 Ill. 48; *State v. H. & N. H. R. Co.* 29 Conn. 538; *U. S. v. U. P. R. Co.* 2 Dill. 527; *State ex rel. Grinsfelder v. Spokane St. Ry. Co.* 19 Wash. 518. The receiver for the time being is the railroad company. *McNulta v. Lochridge,* 141 U. S. 327; *Texas & P. R. Co. v. Cox,* 145 U. S. 593; *Eddy v. Lafayette,* 163 U. S. 464. There can be no removal unless the suit was originally cognizable in the United States Court. *Postal T. C. Co. v. Alabama,* 155 U. S. 482, 486; *Mexican N. R. Co. v. Davidson,* 157 U. S. 201, 208. The right to removal must appear on the face of the information. *Metcalf v. Watertown,* 128 U. S. 586; *Oregon S. L. & U. N. R. Co. v. Skottowe,* 162 U. S. 490; *Gableman v. P. D. & E. R. Co.* 179 U. S. 335, 337; *Postal T. C. Co. v. Alabama,* 155 U. S. 482, 487; *Walker v. Collins,* 167 U. S. 57; *Tennessee v. U. & P. Bank,* 152 U. S. 454; *Mountain View M. & M. Co. v. McFadden,* 180 U. S. 533. Wisconsin is not a "citizen." *Stone v. South Carolina,* 117 U. S. 430; *Postal T. C. Co. v. Alabama,* 155 U. S. 482, 487. Nor is Wisconsin a "foreign

state." *Cherokee Nation v. Georgia,* 5 Peters, 1, 27; *King v. Parks,* 19 Johns. 375, 377. The state's suit for its prerogative writ is not removable. *Rosenbaum v. Bauer,* 120 U. S. 450; *State ex rel. Columbus v. C. & X. R. Co.* 48 Fed. Rep. 626; *Reed v. Reed,* 31 Fed. Rep. 49; *Cates v. Allen,* 149 U. S. 451; *Georgia v. Brailsford,* 2 Dall. 415; *Wisconsin v. Duluth,* 2 Dill. 406; *North Carolina v. Dewey,* 5 Nat. Bank Reg. 466; *Den ex dem. New Jersey v. Babcock,* 4 Wash. C. C. 344; *State ex rel. Drake v. Doyle,* 40 Wis. 174; *State v. C., R. I. & P. R. Co.* (Neb.), 87 N. W. Rep. 188; *State v. C., R. I. & P. R. Co.* 61 Neb. 545. The matter in dispute does not exceed $2,000. *Mexican N. R. Co. v. Davidson,* 157 U. S. 201, 209; *South Carolina v. Seymour,* 153 U. S. 353; *Smith v. Adams,* 130 U. S. 167; *Kurtz v. Moffitt,* 115 U. S. 487; *Polts v. Chumasero,* 92 U. S. 358; *Rosenbaum v. Sup'rs,* 28 Fed. Rep. 223, 225; *Elgin v. Marshall,* 106 U. S. 578; *Barry v. Mercein,* 5 How. 103. The suit is not under the constitution or laws of the United States. *Gableman v. P. D. & E. R. Co.* 179 U. S. 335; *Tennessee v. U. & P. Bank,* 152 U. S. 454; *Southern P. R. Co. v. California,* 118 U. S. 109, 112; *Gold-Washing & W. Co. v. Keyes,* 96 U. S. 199; *Railroad Co. v. Mississippi,* 102 U. S. 135; *Western U. T. Co. v. Ann Arbor R. Co.* 178 U. S. 239; *Blackburn v. Portland G. M. Co.* 175 U. S. 571; *Shoshone M. Co. v. Rutter,* 177 U. S. 505; *Fitzgerald v. M. P. R. Co.* 45 Fed. Rep. 812, 819; *Postal T. C. Co. v. Alabama,* 155 U. S. 482; *Kinney v. Crocker,* 18 Wis. 74, 77; *Powers v. C. & O. R. Co.* 169 U. S. 92, 101; *Jackson v. Allen,* 132 U. S. 27; *Crehore v. O. & M. R. Co.* 131 U. S. 240; *Beadleston v. Harpending,* 32 Fed. Rep. 644.

The following opinion was filed April 1, 1902:

Dodge, J.      The primary question in this proceeding upon the merits—whether, when a railroad company, under a franchise granted by this state so to do, constructs a rail-

road, the same becomes one of the highways of the state, the continuance or destruction of which is a matter of government over which the state, in its sovereign capacity, has control, and whether the right of the public to the continued existence of such highway is fundamental and superior to all rights of the corporation, either to exercise itself, or to pledge, mortgage, or convey to others, so that a physical destruction of that highway is a wrong against the public, which the state may prevent—need not and should not at this time be decided. We have already declared, in granting leave to file this information, that the question is of at least sufficient doubt and importance to warrant its grave consideration when properly presented before a forum having power and authority to decide it, and in that view we persist. Further, we have no doubt that, as it involves the welfare of the public, the care and protection of which is intrusted to the state government, this court, in its original jurisdiction, under our constitution, may properly entertain the information of the law officer of the state to examine and decide what are the rights of the public, and how they shall be vindicated or protected against outrage. However the foregoing questions may be resolved, the question here presented is whether conceding the public right; conceding the power and duty of the state, as a sovereign, to invoke the protective power of this court to prevent an invasion of that right, and the power of this court to entertain such application and grant such protection,—nevertheless the controversy may be transferred to the federal courts by reason of federal law. That the constitution, and the laws of the United States made in pursuance thereof, are the supreme law of the land, controlling courts and judges of the nation and of the states alike, there can be no doubt. Const. U. S. art. VI. That constitution (sec. 2, art. III) includes in the judicial power to be exercised by the courts of the United States "all cases in law and equity, arising under this constitution, the laws

of the United States, and treaties made, or which shall be
made, under their authority;" also controversies "between
a state and citizens of another state." In the distribution
amongst the several federal courts of the judicial power thus
authorized by the constitution, congress has conferred upon
the circuit courts jurisdiction "of all suits of a civil nature,
at common law or in equity, where the matter in dispute ex-
ceeds, exclusive of interest and costs, the sum or value of two
thousand dollars, and arising under the constitution or laws
of the United States." 25 U. S. Stats. at Large (1888), ch.
866, sec. 1. In addition to thus conferring original jurisdic-
tion of such a suit, so enabling it to be brought in the circuit
courts of the United States, congress has enacted that "any
suit of a civil nature, at law or in equity, arising under the
constitution or laws of the United States," "of which the
circuit courts of the United States are given original juris-
diction by the preceding section, may be removed by the de-
fendant or defendants therein to the circuit court of the
United States for the proper district." Id. sec. 2. This law
of congress must, of course, control, and we have therefore
for consideration only the question whether the present con-
troversy falls within the description of those suits thus made
removable into the circuit court of the United States at the
petition of the defendant. The several elements of that de-
scription are: First, that the suit must be of a civil nature,
at law or in equity; second, must arise under the constitu-
tion or laws of the United States; and, third, the amount in
dispute must exceed, exclusive of interest and costs, the sum
or value of $2,000. We proceed, therefore, to apply these
several tests.

The first question is whether this is a suit of a civil na-
ture. Upon this subject the contention of the state is not
very clearly defined. Much is said as to the peculiarity of
the proceeding, by reason of the fact that its purpose is to
vindicate neither private nor proprietary rights, but rights

State ex rel. Att'y Gen. v. Frost, 113 Wis. 623.

of sovereignty to the maintenance of a public utility. How far this contention bears on the immediate question whether it is a suit of a civil nature is not entirely clear. May not the sovereign state engage in a civil suit? Has it done so here? True, the proceeding does not fall accurately within the definition of a "civil action," as furnished in some of the dictionaries. Thus, in 1 Bouv. Law Dict. p. 329, a "civil action" is defined as "an action which has for its object the recovery of private or civil rights or compensation for their infraction;" and in And. Law Dict. p. 185, a definition of the word "civil" is, "Concerning the rights of and wrongs to individuals considered as private persons, in contradistinction to *criminal,* or that which concerns the whole political society." Again, it is apparent that anciently in England many proceedings by information were classed, not as civil, but, rather, as criminal, although their purpose was not strictly punishment, but the recovery of moneys or property of which the sovereign claimed to be wrongfully deprived. 6 Bac. Abr. "Prerogative," p. 467. The view might not be impossible that a proceeding by the sovereign, not to punish an invasion of his prerogative as crime, but to protect it against such invasion, is other than a civil suit, whether it may be called criminal or not. But in the construction of statutes, language must be interpreted in the light of the whole framework of statute law, and of the objects to be accomplished. As early as 1856 certain definitions were enacted by the legislature of Wisconsin, conforming to older legislation already prevalent amongst the states, and since become still more so. Thus proceedings in courts are by secs. 2595, 2596, Stats. 1898, classified into actions and special proceedings; the two evidently intended to exhaust the entire field of controversies in which courts of justice might furnish remedies. Actions, by sec. 2597, were divided into two,—civil and criminal. It would seem, therefore, in

the nomenclature of our own statute makers, that, if the present proceeding is an action at all, it must be either civil or criminal, and that there is no middle class to which it can be assigned. Clearly it is not criminal, for a criminal action is defined by sec. 2598 as one "prosecuted by the state as a party against a person charged with a public offense, *for the punishment thereof."* This distinction is recognized as the true and only one in the often-cited case of *State v. West Wisconsin R. Co.* 34 Wis. 197, wherein, in discussing a procedure by information in the nature of *quo warranto,* it is said, substantially, that the proceeding must be considered as dual,—both civil and criminal,—because it contains elements both of punishment of the offense of unlawful usurpation of an office or franchise, and also serves the purpose of trying the civil right to seize the franchise and oust the wrongful possessor. The words under consideration are, however, used, not in the statutes of Wisconsin, but in those of the United States; and their meaning, while perhaps elucidated by discussions of similar phraseology in other courts, is, of course, controlled by the holdings of the supreme court of the United States, so far as they have gone. Most important, perhaps, among these, is *Ames v. Kansas,* 111 U. S. 449, where an information in the nature of *quo warranto* by the state in its sovereign capacity was brought against a corporation, and the court, by Chief Justice WAITE, quoting the statutes of Kansas, substantially identical with those of Wisconsin above quoted, reached the conclusion that it was a suit of a civil nature; recognizing that as to *quo warranto* there was anciently a criminal aspect, which was held to have been preserved in some of the states, including Wisconsin, but not upon any grounds which would extend to remedies having none of the elements of punishment, but being wholly remedial in their character. A similar holding was made, without very full discussion, in *New Orleans, M. & T. R. Co. v. Mississippi,* 102 U. S. 135,—a

suit for *mandamus* to remove obstructions from a water highway. These cases, while somewhat criticised by the counsel for the state on other grounds, seem never to have been questioned or doubted in their decision of this particular question. We think they constrain us to the conclusion that a proceeding by the state, even in its sovereign capacity, to accomplish a purpose other than enforcement of its penal laws, is "of a civil nature," as those words are used in the federal statute. That conclusion is in no wise antagonized by the holding in *Wisconsin v. Pelican Ins. Co.* 127 U. S. 265, that a suit to collect a penalty prescribed by the penal laws of a state is not a suit of a civil nature; for the present action is not founded upon, nor in aid of, any penal statute. Indeed, the result would be the same even if conceded that a suit to enjoin the commission of an act made criminal by the state law fell within the reasoning of this last case,—a contention made, but not passed on, in *Minnesota v. Northern Securities Co.* 22 Sup. Ct. 308.

Another qualification, which needs to be but briefly considered, is the necessity that the matter in dispute exceed $2,000. Contention is made that this requirement is not satisfied, upon the ground, apparently, that the state is seeking merely an adjudication of its own sovereignty, or of its predominant right to forbid or permit the destruction of its highway, and we are cited to several cases where it was held that, certain right to forbid or permit the destruction of its highway, and their vindication could not meet this requirement of federal jurisdiction. Among such citations are *Barry v. Mercein*, 5 How. 103, concerning the custody of a child; *Kurtz v. Moffitt*, 115 U. S. 487, *habeas corpus; Potts v. Chumasero*, 92 U. S. 358; and *Smith v. Adams*, 130 U. S. 167, controversies over the location of a county seat; *South Carolina v. Seymour*, 153 U. S. 353, for *mandamus* to compel *registration* of a trade-mark. These sufficiently serve to illustrate the contention presented, and the idea pressed upon us. In

this case, however, the state claims the right to have con-
tinued in existence a public highway, which the court may
take judicial notice is a thing of pecuniary value to the
plaintiff,—a thing which costs money, and which, in the
economy of government, is deemed to justify expenditure of
money in its construction. Viewing the situation from the
attitude of the defendant, the action seeks to take from him
the claimed right to sever from the soil material worked into
that highway, and which, in the proceedings set forth by the
information itself, is estimated to be salable for many thou-
sands of dollars. It seems to us clear that both the right
asserted by the state, and the right of which it is sought to
deprive the defendant, are capable of a pecuniary value. It
is not the mere abstract question of the sovereignty of the
state over its highway, or over the conduct of the defendant
with reference thereto. It is the right of the state to retain,
as opposed to the right of the defendant to dismantle and
sell, something which cost money, and which, if desirable to
the state, can be replaced by the expenditure of money. The
statute does not require that the action be one in which the
recovery of a money judgment is demanded upon the one side,
and opposed upon tl ꝛ other. *Scott v. Donald,* 165 U. S. 107;
*Nashville, C. & St. L..R. Co. v. McConnell,* 82 Fed. Rep.
65; *Maffet v. Quine,* 95 Fed. Rep. 199. The rule adopted in
*Scott v. Donald, supra,* where injunction was sought against
the seizure of certain property, was the value of the property
threatened to be seized. In *Humes v. City of Ft. Smith,* 93
Fed. Rep. 857, it was held in reference to an injunction pro-
ceeding that jurisdiction is determined by the value of the
right to be protected, or the extent of the injury to be pre-
vented, by the injunction. In the light of these cases it seems
plain that the right sought to be protected by the state, the in-
jury sought to be prevented, and the right claimed by the de-
fendant and sought to be taken from him, are each and all
capable of pecuniary measurement. That being so, the hold-

ings are uniform that the quantum of pecuniary value, for purposes of an application for removal, like diverse citizenship, need not appear by the original pleading of the plaintiff, but may be shown by and in the petition for removal. *Langdon v. Hillside C. & I. Co.* 41 Fed. Rep. 609; *Weber v. Travelers Ins. Co.* 45 Fed. Rep. 657; *Postal Tel. Cable Co. v. Southern R. Co.* (C. C.), 88 Fed. Rep. 803; Dill. Rem. Causes, § 49; *Texas & P. R. Co. v. Cody,* 166 U. S. 606; *Powers v. Chesapeake & O. R. Co.* 169 U. S. 92.

The next question which we have to consider is whether the present action is one arising under the constitution or laws of the United States. That quality, as an independent ground of jurisdiction in the circuit courts of the United States, was first enacted in the act of March 3, 1875 (ch. 137), and received construction in *Ames v. Kansas,* 111 U. S. 449, where the right both of jurisdiction and removal depended on whether the action arose under the constitution or laws of the United States; it being conceded that, the state not being a citizen of any state, the suit could not fall within the cognizance of the federal courts, on the ground that it was a controversy between citizens of different states. That was an information in the nature of *quo warranto* to annul the act of certain corporations of the state of Kansas in consolidating under a law of the United States, consolidation of such corporations being forbidden by the statute of Kansas; and it was held that, since the authority contested by the state arose under federal statutes, the proceeding fell within the new field of jurisdiction conferred by the act of 1875, although the last conclusion received very little discussion. The limits of this field have been the subject of definition since in a multitude of cases, but, in ascertaining their meaning and applying it to the present situation, we must be guided mainly by the decisions of the supreme court of the United States. The duty being clearly imposed upon this court to hear and adjudicate such a controversy as this, of

course its duty must not be abandoned, except in deference
to a superior law authorizing its removal to another forum.
The law claimed to so authorize is federal, and its meaning
we must decide for ourselves, so far as the question is
original, but must yield to that forum given final and su-
preme power to interpret and enforce the acts of congress so
far as it has spoken. Reported opinions of inferior courts
of the United States may be useful to us, as would be those
of other state courts; but to them we should not feel bound
to yield our own convictions, nor, indeed, in case of serious
doubt, should we feel justified in abandoning our clear duty
because of their claim to a superior right to entertain and
act upon the controversy. What, then, has the supreme court
of the United States decided with reference to the meaning
of these words? In *Tennessee v. Union & Planters' Bank,*
152 U. S. 454, 460, GRAY, J., quotes general definitions
from preceding cases.

"The suit must be one in which some title, right, privilege,
or immunity on which the recovery depends will be defeated
by one construction of the constitution, or a law or treaty of
the United States, or sustained by a contrary construction."
*Carson v. Dunham,* 121 U. S. 421.

"A cause cannot be removed from a state court simply be-
cause, in the progress of the litigation, it may become neces-
sary to give a construction to the constitution or laws of the
United States." *Gold-Washing & W. Co. v. Keyes,* 96 U. S.
199.

In *Texas & P. R. Co. v. Cox,* 145 U. S. 593, 603, it was held
that in an action for injuries resulting from negligence,
against a receiver appointed by a federal court, brought with-
out leave of court, the suit was one arising under the consti-
tution and laws of the United States, because the right to sue
without leave of court was conferred by an act of congress.
This doctrine, however, is substantially repudiated in *Gable-
man v. Peoria, D. & E. R. Co.* 179 U. S. 335; indicating
that the real controversy in the suit, and not the mere privi-

lege to bring it, must arise under federal laws. In that case it was also decided that the bare fact that the receiver derived his appointment and existence from a federal court did not make all actions against him arise under the constitution and laws of the United States. That was said with reference to a mere action for damages resulting from negligence of a receiver's employees in the operation of a railroad. In *Bausman v. Dixon,* 173 U. S. 113, which was a similar case, the court, in holding that it did not arise under federal laws, said:

"It is true that the receiver was an officer of the circuit court, but the validity of his authority as such was not drawn in question, and there was no suggestion in the pleadings or during the trial . . . that any right the receiver possessed as receiver was contested. . . . The mere order of the circuit court appointing a receiver did not create a federal question, under section 709 of the Revised Statutes, and the receiver did not set up any right derived from that order which he asserted was abridged or taken away by the decision of the state court. The liability to Dixon depended on principles of general law applicable to the facts, and not in any way on the terms of the order."

*Cooke v. Avery,* 147 U. S. 375, was an action for the recovery of real estate, based upon the lien of a judgment of a federal court; the federal statute providing that the judgments of federal courts should be liens upon real estate under the same circumstances and to the same extent as the laws of the state should prescribe for judgments of its courts. The suit was held to arise under the laws of the United States; the court saying, by FULLER, C. J.:

"If . . . it appears that some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the constitution or a law of the United States, or sustained by the opposite construction, then the case is one arising under the constitution or laws of the United States."

The same general rule was enunciated, citing numerous prior decisions, in *Starin v. City of New York,* 115 U. S. 248, 257. To this was added the further qualification, in *Southern Pac. R. Co. v. California,* 118 U. S. 109, 113:

"The right of removal does not depend upon the validity of the claim set up under the constitution or laws. It is enough if the claim involves a real and substantial dispute or controversy in the suit."

Another definition, running through several cases, is thus enunciated in *Ex parte Lennon,* 166 U. S. 548, 554:

"Cases arising under the laws of the United States are such as grow out of the legislation of congress, whether they constitute the right or privilege or claim or protection or defense of the party, in whole or in part, by whom they are asserted."

In *Osborn v. Bank of the U. S.* 9 Wheat. 738, it was held that a suit to which a corporation organized under the laws of the United States was a party necessarily arose under the laws of the United States, and might, under the constitution, come within federal jurisdiction. It was there pointed out, too, that, to justify the jurisdiction of those courts, it was not essential that the entire controversy should so arise, and the jurisdiction was not to be defeated by the fact that other questions in the case might depend upon general or state law. This view was reaffirmed in the *Pacific Railroad Removal Cases,* 115 U. S. 1, with the statement:

"It is sufficient for the purposes of federal jurisdiction if the case necessarily involves a question depending on such constitution, laws, or treaties."

Also in *Butler v. National Home,* 144 U. S. 64, and *Railroad Co. v. Cody,* 166 U. S. 606. A long and varied line of decisions establishes the view that the question of the duty or power of a federal officer, or an officer of a federal court in executing the direct command of that court, is one arising under the laws of the United States. *Mississippi v. Johnson,* 4 Wall. 475, and *Georgia v. Stanton,* 6 Wall. 50,

were actions to. enjoin the president and secretary of war, respectively, from doing. certain acts within their official authority and duty under acts of congress. It was not questioned that the suits arose under the constitution and laws of the United States, and that seems to have been assumed. They were dismissed, however, on other grounds. In *Feibelman v. Packard,* 109 U. S. 421, it was held that a suit against the United States marshal on his bond for wrongful seizure of goods necessarily arose under federal laws. In *Bock v. Perkins,* 139 U. S. 628; and *Sonnentheil v. Moerlein Brewing Co.* 172 U. S. 404, the same holding was made with reference to suits against United States marshals in trespass and trover for seizure and conversion of goods under writs of attachment. The latter of these arose subsequent to the amendment of 1887, and the holding therefore proceeded to the extent that the federal question appeared from a complaint alleging simply those facts. Numerous other cases involving the same principle are cited in these opinions, and need not be reiterated here. The condition of the law as established in the federal courts is declared in *Wood v. Drake,* 70 Fed. Rep. 881, which was a suit against the United States marshal, apparently not raising the validity of his process, but the propriety and regularity of his acts in executing the same; and its removal was sustained on the ground that "the national courts are the proper tribunals for adjudicating all questions as to the validity of their own process, and the lawfulness of the acts of their own ministers in executing the same." In *First Nat. Bank of Cicero v. Society for Savings,* 80 Fed. Rep. 581, a suit to enjoin county officers from levying a tax in pursuance of a *mandamus* issued from the federal courts was held to be removable, as arising under the constitution and laws of the United States. It was said:

"The proceeding in the state court involves the enforcement of a judgment of the United States circuit court, acting

under the constitution and laws of the United States, and it is therefore a question arising under that constitution and those laws."

· *Evans v. Dillingham,* 43 Fed. Rep. 177, was almost identical with the present suit. It was brought to enjoin a federal receiver of a railroad from removing division headquarters and machine shops from one city to another, and it was held to arise under the constitution and laws of the United States, and to be removable.

In the light of these holdings by the federal courts, we do not feel at liberty to doubt that any controversy which necessarily raises the power or duty of an officer of the United States, or of one of its courts, to perform any acts expressly commanded, whether that power and duty is regulated by an express statute or by the judgment, decree, order, or process of a federal court, arises under the constitution and laws of the United States. Indeed, the very statement of the proposition would seem to preclude argument. If the doubt as to the duty of the officer arises upon the construction of his authority under a statute, decree, or writ, those are all questions essentially within the province of the federal courts, and, as to decrees or writs, especially within the province of the court from which they emanate. An attempt by the state court to construe them at once presents that peril of conflict of jurisdictions and opinions which, from the nature of the two governments, must be avoided, and can be avoided only by the state court yielding the controversy to the federal court when that is in proper form demanded.

Since the amendment of the removal statute by ch. 373, 24 U. S. Stats. at Large, another restriction is placed upon the removal of suits instituted in the state courts. That statute imposed as a condition of removal that the suit be one of which the federal circuit courts are given original jurisdiction. This was a restrictive provision, and has been held to embody the requirement, long before decided with

reference to original jurisdiction, that the federal question must appear by the plaintiff's statement of his case in his original pleading. See *Gableman v. Peoria, D. & E. R. Co.* 179 U. S. 335, and *Arkansas v. Kansas & T. Coal Co.* 183 U. S. 185. This necessitates that our inquiry as to whether the present suit arises under the constitution or laws of the United States should be based entirely upon the information filed, without considering other facts asserted by the petition for removal, except the disputed amount elsewhere referred to. If the information declared merely that one *Albert C. Frost* was about to tear up and destroy the railroad in question, it would be entirely clear that the action would not be removable; for, however complete a federal question might ultimately come into the case by reason of the defenses which *Frost* might interpose, we could find none such upon the face of the information. The information, however, is not confined to such allegation. Its purpose, evidently, is to inform the court fully of the character of the controversy which the state seeks to lay before us, and, to that end, fully sets forth the grounds upon which, and the capacity in which, *Frost* is threatening to physically destroy the alleged highway, and which the state contends are not sufficient to authorize him to do so. Those grounds are that he is both receiver and special master in chancery in an action duly pending in the circuit court of the United States; that, in his capacity as special master, he is commanded by an order or modified decree to do the very acts sought to be enjoined. Certain claimed insufficiencies or grounds of invalidity of such authority are expressly set forth in the information: First, that the modification of the decree was made without opportunity for proper hearing; secondly, that some of the facts recited therein as justifying it are not true; thirdly, that the court had no lawful jurisdiction to make said order or modification of decree, for several reasons stated in the information,—among others, that the issues in the action were not

such as to warrant it, and because the making of such order
is an unlawful invasion of the sovereign and prerogative
rights and interests of the *State of Wisconsin,* and all the
people thereof. In support of the application for leave to
file the information, the attorney general, by printed argu-
ment, contended that the order under which the receiver was
acting was void, because not asked for in the bill, the power
to decree in case of default being limited to the field of the
bill filed; also because the jurisdiction of the federal court
did not extend to the making of any order which should in-
volve the destruction of a highway of the *State of Wisconsin;*
because the United States court had no power, after the ex-
piration of the term, to modify the original decree of July
5th; and because the order is in defiance of an act of con-
gress requiring the receiver to manage the road according to
the requirements of the valid laws of the state. It is thus
clearly apparent, whether we consider these arguments, or
merely the information, that the plaintiff, in the original
proceeding filed, brings into the controversy the validity of
the express order of the United States court, directing the
doing of the precise things sought to be enjoined, and seeks
an adjudication that defendant's acts in accordance therewith
are not justified, for reasons including the want of jurisdic-
tion of the circuit court of the United States to make such
an order. It cannot be doubted that the jurisdiction of the
federal court depends wholly upon the constitution and laws
of the United States; nor that its power, after the expira-
tion of a term, to modify a decree already entered, depends
wholly upon the construction to be given to the laws of con-
gress originating that court, and granting and defining its
powers. In this respect the involvement of the federal laws
is much more obviously presented by the original pleading
than in *Bock v. Perkins,* 139 U. S. 628; and *Sonnentheil v.
Moerlein Brewing Co.* 172 U. S. 404, where it was merely
alleged that the marshal committed torts while acting under

a writ of attachment. In brief, the information obviously presents for determination the question of the power and duty of the special master as an officer of the United States circuit court; whether its unambiguous direction, in the light of its powers under federal laws, authorizes or does not authorize the acts he is about to commit.

As already stated, strenuous contention is made that the state here proceeds in a sovereign or governmental capacity, and that it cannot be drawn into the courts of another sovereignty against its will. The field of inquiry thus opened is a very wide one, if the states of the Union are to be viewed as wholly independent sovereignties, like nations wholly foreign to each other. They are not that, however. They are each and all parts of a general sovereignty, which, within a limited sphere of activity, and as to specified subjects, is their superior; and as to that government they are by no means absolutely independent. It cannot be doubted that the whole people of this nation could, in framing its constitution, make the state governments subject to the federal in any respect they chose, as, indeed, they might abolish state governments entirely. Hence the question is not how far an independent sovereign may be controlled, but, how far has power of control over individual states been conferred upon the national government? Over the states as litigants, judicial control is vested in the United States courts by very broad language, to wit, in "all cases in law or equity, arising under this constitution and the laws of the United States," in "controversies between two or more states," and "between a state and citizens of another state," besides other provisions not now material. There is in this language no exception from such judicial control of any suit in which the state is acting as a sovereign, but the federal courts themselves have imported into the words some such exceptions in deference to the presumed degree of sovereignty intended to be left with the states. Thus it has been held that the words "all

cases in, law or equity" and "controversies" mean only all cases or controversies of a civil nature, because of the incongruity, if not absurdity, of one government undertaking to enforce the penal laws of another. *Chisholm v. Georgia,* 2 Dall. 419, 432; *Wisconsin v. Pelican Ins. Co.* 127 U. S. 265. But it was also held that by this constitution was taken away that high sovereign prerogative of immunity from suit save by consent. *Chisholm v. Georgia, supra.* That prerogative was in part returned by the eleventh amendment, but not so completely as to protect one state against suit by another without its consent. *Missouri v. Illinois,* 180 U. S. 208.

Thus it is obvious that the hard and fast rule that the federal courts have no judicial power over any suit or controversy which involves sovereign action by the state is not correct, but that the true position is an intermediate one, to be ascertained from the decisions of the supreme court of the United States, and the reasons whereon they are founded. It is hardly necessary to indulge in a *résumé* of all of the cases which have been passed on. They are gathered together and commented on exhaustively in *Wisconsin v. Pelican Ins. Co., supra,* and the very late case of *Missouri v. Illinois, supra.* As a result, however, of an examination of all the decided cases, we find the following limitations have been placed upon the broad and general language of the constitution by reason of the sovereign character of the party: First, that suits in enforcement of criminal or penal laws are excluded from the jurisdiction; secondly, that suits to enforce action over which the political branch of a government has full control are excluded, for the reason that such questions are not justiciable,—that their control is not within the judicial power. On this principle, compulsion of the governor of a state to deliver up a fugitive from justice upon the requisition of another state was denied. *Kentucky v. Dennison,* 24 How. 66. See, upon same subject, *New Hamp-*

*shire v. Louisiana,* 108 U. S. 76; and *In re Terlinden,* 22 Sup. Ct. 484. This limitation is not one resting peculiarly upon the federal courts in dealing with the state governments, but upon all courts in dealing with those functions of government which pertain exclusively to the political branches thereof. It rests upon the federal courts not only when and because they deal with acts of a state government, but when they deal with the political—executive or legislative—branches of the federal government as well, just as it rests on state courts in efforts to direct or control action of the political branches of their governments. *Mississippi v. Johnson,* 4 Wall. 475; *Cherokee Nation v. Georgia,* 5 Pet. 1; *State ex rel. Rose v. Superior Ct. of Milwaukee Co.* 105 Wis. 651. The other important cases in which jurisdiction has been declined are, for example, where the state is, in effect, suing in the interest of certain of its citizens, so that the action is one by the citizens of one state against another state, excluded under the policy of the eleventh amendment. Ilustrations of this class are *New Hampshire v. Louisiana, supra,* and perhaps *Louisiana v. Texas,* 176 U. S. 1. Again, in cases where the state sues to vindicate an alleged proprietary right, but no such right is shown to exist. *South Carolina v. Georgia,* 93 U. S. 4. On the other hand, a large number of controversies have been entertained by the federal courts which did involve the governmental and sovereign action of the plaintiff state. Foremost and earliest amongst these are the disputed boundary cases, where the question was whether one state or another shall exercise sovereignty over certain territory, in which jurisdiction of the federal courts has been repeatedly maintained. *New York v. Connecticut,* 4 Dall. 1; *New Jersey v. New York,* 5 Pet. 284; *Rhode Island v. Massachusetts,* 12 Pet. 657; *Missouri v. Iowa,* 7 How. 660; *Florida v. Georgia,* 11 How. 293; *Florida v. Georgia,* 17 How. 478; *Alabama v. Georgia,* 23 How. 505; *Virginia v. West Virginia,* 11 Wall. 39. In *Georgia v. Brailsford,* 2 Dall.

415, the supreme court took jurisdiction and granted injunction to prevent disposal of property which the state claimed had become forfeited to it under its penal laws. The action was ultimately dismissed because the jury found the facts against the forfeiture. In *Wisconsin v. Duluth,* 96 U. S. 379, which was a suit in equity in aid of the governmental and sovereign function of the state of Wisconsin, the supreme court of the United States, while declining to expressly decide whether it had jurisdiction or not, assumed jurisdiction, and decided the question of fact between the parties. *New Orleans, M. & T. R. Co. v. Mississippi,* 102 U. S. 135, presented an obvious case of the application by the state to a court to aid it in its governmental or sovereign capacity in suppressing obstruction to a water highway. It was held not only to be justiciable, but to be removable to the federal courts, because the obstruction was claimed to be authorized by federal laws. We have already called attention to *Ames v. Kansas* (111 U. S. 449), where jurisdiction was sustained over an action by the state in its sovereign capacity upon an information in the nature of *quo warranto.* In *Southern Pac. R. Co. v. California,* 118 U. S. 109, the application to the court was for aid to the state government in collection of its taxes, and, as it arose under a law of congress, it was held to be within the proper jurisdiction of the federal court. The latest important case on the subject is *Missouri v. Illinois,* 180 U. S. 208, where the state of Missouri was held entitled to sue in the federal supreme court, as a sovereign, to restrain another state from defiling the waters of the Mississippi to the injury of the public of the state of Missouri. In that case, after an exhaustive examination of the prior decisions of the court, Mr. Justice Shiras sums up as a conclusion:

"Whenever and in all cases, where one state may choose to make complaint against another, no matter whether the subject of complaint arises from the legislation of a defendant

State ex rel. Att'y Gen. v. Frost, 113 Wis. 623.

state, or from acts of its officers and agents, and no matter whether the nature of the injury complained of is to affect the property rights or the sovereign powers of the complaining state, or to affect the rights of its citizens, the jurisdiction of this court would attach."

It may still be said, as in *Wisconsin v. Pelican Ins. Co.* 127 U. S. 297, that the cases decided by the United States court are referred to, "not as fixing the outermost limit of that jurisdiction," but as showing merely the instances in which the jurisdiction has been exercised, and those in which it has been refused. As already pointed out, there is no penal aspect to the rights which the state now seeks to enforce. No statute has been suggested to us making the threatened conduct of the defendant criminal, or imposing any penalty therefor, and the federal jurisdiction cannot be excluded on the same ground as in the *Pelican Ins. Co. Case.* The only other ground of exclusion recognized by the supreme court is that the subject of the action is not justiciable. That objection certainly cannot lie in the mouth of the plaintiff in this case, which has no standing in court at all unless it presents a justiciable controversy. But there is nothing in this case to make its maintenance at all doubtful, under the principle of the cases above cited, in this respect. It is no attempt to control the political branches of the state government. It is an attempt to regulate and control an individual,—at best, an officer of a court,—and is within the proper power of some court. The state, having seen fit to submit the question to the courts,—nay, to invoke their aid in the performance of its governmental duty,—must yield to the provision of the constitution and laws of the United States that its suit, if arising under that constitution or those laws, shall, at the instance of the defendant, be removable into the federal courts.

Several further obstacles to the removal of this suit are suggested by counsel for the state, which need no more than cursory notice. Thus, it is argued, as if relevant to the ques-

tion, that the state courts can ignore a void order of a federal court, or, indeed, a void act of congress, and proceed to render decree upon the holding that it is void. This is, of course, true, not only with reference to state courts, but with reference to every executive officer whose conduct is to be affected by the validity or invalidity of such order or statute; but the ultimate authority to decide finally and conclusively upon the jurisdiction of a federal court, or upon the validity of one of its decrees or of a federal statute, is in the federal courts, and the consideration of such validity must be yielded up by the state courts in any case covered by the federal removal statutes.

Again, removal to the circuit court for the Western District of Wisconsin is said to be impossible, because that court would not have jurisdiction of the defendant; he not being a resident, and it being required that suits against citizens of other states shall be brought in the district of their residence. This, however, is a mere personal privilege, which the defendant may waive, and not, as counsel suggests, a question of jurisdiction. *Texas & P. R. Co. v. Cox,* 145 U. S. 603.

Again, it is urged that the allegation of amount in dispute is not stated in the language of the statute in the petition for removal. The language of that petition is, "The amount involved therein, exclusive of interest and costs, exceeds the sum of two thousand dollars." The information shows clearly the subject of dispute, and, in the light of the facts there apparent, we think this allegation sufficient to make the required *quantum* of the dispute apparent. *Blackburn v. Portland G. M. Co.* 175 U. S. 571.

Another objection is, apparently, that the federal court has not the machinery to render the full relief obtainable in this court, and several cases where removal has been denied on that ground are cited to us. We can discover no lack of machinery at the command of the circuit court of the United States to restrain its own receiver or master from doing acts

which may be held beyond his power to perform, or beyond the power of that court to direct.

It is somewhat vigorously contended by the defendant that this action may be removed, independently of all other grounds, because it is ancillary to the foreclosure action now pending in the circuit court of the United States, in which this receiver has been appointed, and his duties prescribed. There is some support for this position in decisions of the inferior federal courts. *Jewett v. Whitcomb,* 69 Fed. Rep. 417; and *Carpenter v. Northern P. R. Co.* 75 Fed. Rep. 850. No such ground is specified in federal statutes, and, as we do not find that it has yet been authoritatively established by the supreme court of the United States, we prefer to rest our decision upon the statutory grounds already discussed.

We reach the conclusion that the present suit is of a civil nature; that it arises under the constitution and laws of the United States, and is within the original jurisdiction of the circuit court of the United States for the Western District of Wisconsin; and that neither from the character of the parties nor of the controversy arises any obstacle to avert the effect of the federal statute requiring removal of such suits at the petition of the defendant.

*By the Court.*—Ordered that the petition for removal be granted.